AMERICAN TRANSFER AND STOR-
AGE COMPANY, Appellant,

v.

Raymond J. BROWN, Appellee.

No. 19598.

Court of Civil Appeals of Texas,
Dallas.

April 12, 1979.

Rehearing Denied May 9, 1979.

Duncan E. Boeckman, Golden, Potts, Boeckman & Wilson, Dallas, for appellant.

Carl David Adams, Dallas, for appellee.

Before GUITTARD, C. J., and AKIN and ROBERTSON, JJ.

GUITTARD, Chief Justice.

This suit was brought under the Texas Deceptive Trade Practices Act, Tex.Bus. & Comm.Code §§ 17.42–17.50 (Vernon Supp. 1979) for damages to household goods being shipped from Irving, Texas, to Fairbanks, Alaska. The trial court rendered judgment against the packer, who also acted as agent of the carriers, for treble damages and an attorney's fee. The principal question is whether the Texas Act is pre-empted by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11), (1970), which concerns liability for goods shipped in interstate commerce.

■ We hold that the Carmack Amendment does not pre-empt the Texas Act with respect to liability for false, misleading, or deceptive acts and practices that occurred before the contract of carriage was made. For like reasons, we hold that a contractual limitation of liability does not apply. However, we conclude that the cause must be reversed and remanded for a new trial because the trial court erred in excluding evidence of the shipper's acceptance of insurance benefits under coverage provided by the contract. We also hold that damages for mental anguish cannot be recovered for this kind of loss, and we give directions concerning special issues to be submitted on another trial.

1. Pre-emption of Deceptive Trade Practices Act by the Carmack Amendment

Defendant does not challenge the sufficiency of the evidence to support the jury's findings of deceptive trade practices. Consequently, we must assume that plaintiff has established his cause of action for deceptive trade practices unless the Texas Deceptive Practices Act is inapplicable because of the interstate character of the shipment involved. Defendant's principal contention is that the Act does not apply because this suit is an action for damages to freight shipped in interstate commerce within the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11) (1970), which regulates such claims and excludes all recovery based on state statutes or common-law grounds.

Plaintiff asserts that his claim is not based on the contract of carriage or on any rule of carrier liability, under either statute or common law, but that it rests solely on the Texas Deceptive Trade Practices Act. He argues that the interstate character of the shipment does not exempt defendant from the penalties of the Texas law for false, misleading, and deceptive acts and practices.

This question has given us difficulty because the opinions of the Supreme Court of the United States on the question of federal pre-emption of state law, though numerous, provide no clear guidance. Each case turns on the peculiarities and special features of the regulatory scheme in question. *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 637, 638, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973).

■ Of course, if there is a direct conflict between federal and state law, the federal law controls under the Supremacy Clause in Article VI of the United States Constitution. *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Swift and Co. v. Wickham,* 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); *Gibbons v. Ogden,* 9 Wheat. 1, 22 U.S. 1, 6 L.Ed. 23 (1824); see, e. g., Note, *The Preemption Doctrine: Shifting Perspectives on Federalism and the Burger Court,* 75 Colum.L.Rev. 623 (1975). Likewise, state legislation is invalidated by a federal statute that either expressly or impliedly by its structure and purpose evinces an intention to occupy the field and exclude state regulation. *Jones v. Rath Packing Company,* 430 U.S. 519, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). The

test is whether under the circumstances of the particular case the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1940).

Accordingly, we must examine the Carmack Amendment and the decisions construing it to determine the purposes and objectives of Congress. The subject matter of the amendment is contracts for interstate transportation of property and the liability of carriers for breach of such contracts. The statute contains detailed provisions concerning the liability of initial and connecting carriers for losses in interstate shipments, issuance of bills of lading, contractual limitations of liability, and notice and filing of claims. This statute was construed authoritatively in the leading case of *Adams Express Co. v. Croninger,* 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1912), which held that the provision of this law permitting a carrier to fix its rates with respect to the agreed or declared value of the property renders inapplicable any local law forbidding limitation of liability to less than the full value. The Supreme Court pointed out that the purpose of the Carmack Amendment was to free interstate shipments from the diversity of legislative and judicial holdings that made it difficult for shippers and carriers to know the extent of the carrier's responsibility for goods delivered to it for transportation from one state to another. The court stated:

> That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation, or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take

possession of the subject, and supersede all state regulation with reference to it. [226 U.S. at 505–506, 33 S.Ct. at 152].

Following *Croninger,* the Supreme Court held in *Atchison, T. & S. F. Ry. v. Harold,* 241 U.S. 371, 36 S.Ct. 665, 60 L.Ed. 1050 (1916), that the Carmack Amendment applies to liability for an error in a bill of lading even though Congress has not legislated specifically on that subject. The court said that the amendment "was an assertion of the power of Congress over the subject of interstate shipments, the duty to issue bills of lading, and the responsibilities thereunder, which, in the nature of same, excluded state action." The court reaffirmed its position that the "prime object" of the amendment "was to bring about a uniform rule of responsibility as to interstate commerce and interstate commerce bills of lading." This principle of uniformity of responsibility for shipments in interstate commerce has been held to exclude recovery of the attorneys' fees provided by state law in an action for damages to an interstate shipment. *Strickland Transport Co. v. American Distrib. Co.,* 198 F.2d 546, 547 (5th Cir. 1952); *Southwestern Motor Transport Co. v. Valley Weathermakers, Inc.,* 427 S.W.2d 597 (Tex.1968).

◼ Comprehensive though the Carmack Amendment may be in its regulation of contracts of carriage in interstate commerce and claims arising out of such contracts, we conclude that deceptive trade practices, except possibly to the limited extent of misrepresentations affecting the applicable rate,[1] do not fall within the ambit of federal regulation. The uniformity sought by the Carmack Amendment, according to the authorities above mentioned, is uniformity in the requirements of a contract of carriage in interstate commerce and in the carrier's liability for breach of its duties under such a contract. The Deceptive Trade Practices Act does not purport to

---

1. Another federal statute forbids misstatement of weight or classification of freight for the purpose of obtaining or allowing transportation at less than the regular rate. 49 U.S.C. § 10 (1970).

regulate these matters and presents no obstacle to full accomplishment of uniformity in these respects. It applies to false, misleading, and deceptive acts or practices in general and makes no special provision for interstate shipments or other transactions in interstate commerce. We find nothing in the Carmack Amendment or in the decisions construing it suggesting that uniformity was sought with respect to legal liability for false, deceptive, or misleading acts or practices preliminary to the formation of the contract for interstate shipment. We conclude that protection of interstate shippers from such practices is left to the police powers of the several states.

■ We recognize that in this case damages for violation of the Deceptive Trade Practices Act may be measured by the same loss, at least in part, as damages for breach of the contract of carriage. This coincidence should not obscure the differences in the purposes of the two statutes, in the scope of activities they undertake to regulate, or in their respective grounds of liability. In these important respects, the two neither conflict nor overlap. Measurement of damages by the same loss does not present an obstacle to full accomplishment of the purpose of the federal legislation. For this purpose the treble damage penalty imposed by the Deceptive Trade Practices Act is no different from a fine or civil penalty determined on some other basis. Consequently, we find no basis to hold that the state's regulation of deceptive trade practices relating to interstate shipments has been pre-empted by federal legislation.

Although this exact problem was not considered in any of the cases cited to us, our holding is consistent with the decisions of the Supreme Court of the United States concerning federal pre-emption. The most nearly analogous case we have found is *Huron Portland Cement Co. v. City of Detroit,* 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960). There an ordinance regulating emission of smoke from boilers was held applicable to boilers of ships engaged in interstate commerce while within the city's boundaries, even though such ships and their boilers had been licensed under federal law, inspected by federal authority, and certified by federal officials as safe for navigation. The Supreme Court held that there was no overlap between the federal inspection law, which was concerned with protection against the perils of maritime navigation, and the city ordinance, which aimed to eliminate air pollution for protection of the health and welfare of the local community. *Id.* at 445, 80 S.Ct. 813. The court pointed out that state regulation based on the police power, which does not discriminate against interstate commerce or operate to disturb its required uniformity, was not an undue burden on interstate commerce. That decision may be compared with *Douglas v. Seacoast Products, Inc.,* 431 U.S. 265, 97 S.Ct. 1740, 52 L.Ed.2d 304 (1977), which held that federal regulations licensing fishing vessels pre-empted a state licensing law imposing more restrictive requirements on vessels owned by non-residents than on those owned by local citizens, but in that case the court observed that reasonable and even-handed conservation measures stood unaffected by the decision.

Also, in *Askew v. American Waterways Operators, Inc.,* 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973), a Florida statute imposing strict liability for damages incurred by the state or by private persons as a result of discharge of oil and other chemicals into its territorial waters was held not pre-empted by a federal statute authorizing federal regulations requiring maintenance of equipment to prevent oil spills by ships and terminal facilities and imposing on their owners liability without fault for clean-up costs incurred by the federal government as a result of such spills. Similarly, in *Dickson v. Uhlmann Grain Co.,* 288 U.S. 188, 53 S.Ct. 362, 77 L.Ed. 691 (1933), the court held that the Federal Grain Futures Act, which imposed certain requirements for sales of grain for future delivery, did not supersede a Missouri statute prohibiting gambling on grain futures. Other

decisions standing for the same principle are cited in the margin.[2]

Defendant argues that if the Deceptive Trade Practices Act is applicable, all the plaintiff would have to do to avoid the federal law would be to prove a representation that the goods would not be damaged in shipment. Consequently, defendant insists, the limitation of liability provided by the Carmack Amendment would be nullified if the penalties of the Deceptive Trade Practices Act were permitted to apply.

■ We do not agree. We may concede for present purposes that the Carmack Amendment and its provision for limitation of liability applies to any case in which the wrongful conduct alleged would amount to a breach of the contract of carriage, whether the suit is brought in the form of an action on the contract or on some statutory or common-law ground. Nevertheless, in this case, plaintiff's action is not based on any conduct that could be considered a breach of the contract of carriage. It is based on false, misleading, and deceptive acts and practices of defendant's agent that occurred before the parties entered into the contract. Plaintiff Raymond Brown alleged that he engaged the services of defendant American Transfer & Storage Company to move his household belongings and Chevrolet automobile to Fairbanks, Alaska; that plaintiff was induced to enter into the contract by the false, misleading and deceptive representations of defendant's agents that defendant would provide a "door to door" service, including careful packing, storage, movement, delivery, and placement in defendant's residence, and that certain types of containers and vaults would be used to assure safe delivery; and that as a result of such representations plaintiff was damaged in the amount of $23,200 for loss or damage to his household goods, $1,050 for repairs to his automobile, and $5,000 in mental anguish.

■ These allegations were amply supported by the evidence. Defendant was not itself an interstate carrier, but it served as an agent for interstate carriers and as a packer of goods for interstate shipment. In response to a telephone call from plaintiff, defendant's agent, Joe Stanton, came to plaintiff's home in Irving, surveyed its contents, and described the services that defendant offered. Stanton represented that the goods would be packed securely in wooden vaults or crates before plaintiff's eyes in Irving, Texas, that the containers would not be opened or tampered with until delivered to plaintiff's new home in Fairbanks, Alaska, that when they arrived there they would be unpacked and placed in the house at plaintiff's direction, and that the automobile would be shipped separately. Relying on these representations, plaintiff entrusted his goods to defendant for shipment. The evidence shows that these representations misled plaintiff with respect to defendant's actual method of operation. Defendant's employees took the goods and packed them, as represented, but then, without plaintiff's knowledge, removed the goods from the wooden containers and stacked the furniture and the cardboard boxes containing plaintiff's other possessions in a single Sealand container, together with the automobile. This method, according to plaintiff's witnesses, was inadequate

---

2. *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Ware,* 414 U.S. 117, 136–37, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973) (federal act regulating stock exchanges did not preempt state legislation concerning rights of brokers' employees); *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 145, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963) (federal regulations establishing minimum standards for marketing of avocadoes did not displace California regulations concerning oil content of the same products); *Colorado Anti-Discrimination Comm'n v. Continental Air Lines,* 372 U.S. 714, 721–22, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963) (federal anti-discrimination laws did not displace Colorado statute forbidding racial discrimination in hiring airline employees); *California v. Zook,* 336 U.S. 725, 732, 69 S.Ct. 841, 93 L.Ed. 1005 (1949) (federal regulation of travel bureaus did not preempt consistent state regulation of same subject); *Rice v. Board of Trade,* 331 U.S. 247, 253, 67 S.Ct. 1160, 91 L.Ed. 1468 (1947) (Federal Commodity Exchange Act did not pre-empt consistent state regulation of commodity exchanges); and *see generally,* Note, *The Preemption Doctrine: Shifting Perspectives on Federalism and the Burger Court,* 75 Colum.L.Rev. 623 (1975).

for overseas shipment. When received in Fairbanks most of the goods were missing or damaged and the automobile needed repair. Moreover, the evidence shows that the practice of the terminal carrier, which delivered the goods in Fairbanks, was not to unpack the goods and place them as directed, but merely to set the furniture and cardboard containers in the house. Defendant did not deny these facts, but undertook to defend its practices as acceptable methods of transportation. In the light of this evidence, the jury was justified in finding that Stanton's representations constituted deceptive trade practices and that plaintiff was adversely affected in that the inadequate packing of the goods caused a substantial portion of them to be lost, destroyed and damaged, that plaintiff and his wife were put to additional trouble in unpacking and arranging those that remained, and that they were without an automobile while theirs was being repaired. We hold that for the cause of action so established the applicable provisions of the Deceptive Trade Practices Act have not been preempted by the Carmack Amendment.

## 2. Limitation of Liability

■ Apart from the pre-emption question, defendant asserts that the court erred in not limiting plaintiff's damages to thirty cents per pound of the weight of the goods shipped, as specified in the order for services signed by plaintiff and also in the bill of lading. It also complains that the court erroneously excluded those portions of the order and of the bill of lading which contain such limitations of liability. Plaintiff responds that the limitation of liability was properly excluded because it was void and unenforceable under section 17.42 of the Texas Deceptive Trade Practices Act, which provides that any waiver by a consumer of the provisions of the Act "is contrary to public policy and is unenforceable and void."

We conclude that plaintiff's contention in this respect is well taken insofar as the contractual limitation of liability is relied on as an absolute limitation of the damages.

The limitation may be effective to limit liability under the contract, but, as already pointed out, this suit is not brought on the contract. It is rather an action under the Deceptive Trade Practices Act for damages from misrepresentation made before the contract was signed. Since we have already held that application of the Deceptive Trade Practices Act has not been preempted by the Carmack Amendment, we hold also that section 17.42 is effective to nullify any contractual limitation of liability insofar as this action is concerned. Nevertheless, we conclude that the court erred in excluding the contractual limitation insofar as it bears on the question of admissibility of the matter of insurance payments, to which we now turn our attention.

## 3. Insurance Coverage and Payment

■ Alternatively, defendant asserts that even if the Deceptive Trade Practices Act applies, the court erred in excluding from evidence the insurance certificate obtained by defendant to cover plaintiff's shipment and in excluding evidence of the $11,009.22 payment received by plaintiff in settlement of his claim under that certificate. Defendant alleged in its answer that as a part of its agreement with plaintiff, defendant, as agent for the insurance company, issued a certificate of insurance covering loss or damage to plaintiff's goods, that plaintiff had made a claim under this certificate and had received a payment of $10,000 for loss and damage to his household goods and personal effects and $1,009.22 for damages to his automobile. Evidence supporting these allegations was excluded by the court in response to plaintiff's motion in limine, and defendant tendered the evidence in a bill of exception. The jury found that the damage to plaintiff's household goods and furniture was $18,434 and that the cost of repair of his automobile was $1,059.22. The jury also found damage from mental anguish in the amount of $5,000. The trial court rendered judgment for three times the sum of these amounts, plus an attorney's fee.

Plaintiff seeks to support the trial court's exclusion of the insurance coverage and set-

tlement by invoking the collateral source rule and arguing that the insurance payment is immaterial because defendant is not entitled to the benefit of any insurance coverage procured for plaintiff.

We conclude that the collateral source rule does not apply and that the issuance of the insurance policy and the payment under it were admissible to rebut the amount of damages claimed by plaintiff because the insurance was procured pursuant to the contract between the parties.

The theory behind the collateral source rule is that a wrongdoer should not have the benefit of insurance independently procured by the injured party, and to which the wrongdoer was not privy. *Texas & P. Ry. v. Levi,* 59 Tex. 674, 676 (1883); *Graves v. Poe,* 118 S.W.2d 969 (Tex.Civ.App.—El Paso 1938, writ dism'd); *Perrott v. Shearer,* 17 Mich. 48, 56 (1868). The rule is an exception to the general principle forbidding more than one recovery for the same loss. *See* Maxwell, *The Collateral Source Rule in the American Law of Damages,* 46 Minn.L.Rev. 669 (1962). That principle was firmly established by the Supreme Court of Texas in *Bradshaw v. Baylor University,* 126 Tex. 99, 84 S.W.2d 703 (1935) and was reaffirmed in *T. L. James & Co. v. Statham,* 558 S.W.2d 865, 868 (Tex.1977).

The general principle, rather than the collateral source rule, was applied by the supreme court in *Publix Theatres Corp. v. Powell,* 123 Tex. 304, 71 S.W.2d 237, 241 (1934). There a lease of a theater required the lessee to keep the premises insured. A fire occurred as a result of the negligence of a corporation affiliated with the lessee. The lessor collected the insurance proceeds and then sued the negligent party for the loss. The supreme court held that by providing the insurance, the lessee had satisfied the claim of the damaged party. The court distinguished cases applying the collateral source rule on the ground that in those cases the payment by the insurance company was the result of a contract to which the wrongdoer was not privy.

Here, likewise, the record shows that the insurance coverage in question was not pro-cured independently by plaintiff, but was procured by defendant pursuant to the contract between the parties. The order for moving services signed by plaintiff provides as follows:

IN THE ABSENCE OF ANOTHER SEPARATE WRITTEN AGREEMENT AND IN CONSIDERATION OF THE RATES TO BE CHARGED FOR THE SERVICES TO BE PERFORMED, I AGREE THAT THE LIABILITY OF AMERICAN TRANSFER AND STORAGE CO. IS LIMITED TO THIRTY CENTS (.30¢) PER POUND PER ARTICLE AND TO TWENTY–FIVE DOLLARS TOTAL CLAIM. I WILL ARRANGE ADDITIONAL INSURANCE IF DESIRED.

This same order provides for insurance on the goods in the amount of $26,100 at a premium of $522. The bill of lading and freight bill, also signed by plaintiff, and issued by defendant as agent for Columbia Export Packers, Inc., provides:

2. This carrier's liability for loss or damage is limited to a maximum of 30¢ per pound of the weight of each shipping package or unpacked article. Additional insurance is available to the shipper in the event he desires it.

3. Shipper declares that the entire shipment is valued at $____ and hereby agrees to the foregoing contract, conditions and terms.

In accordance with these contracts, plaintiff paid to defendant the premium of $522 and defendant's agent Stanton signed and delivered to plaintiff a "Transit-Pak Certificate" evidencing insurance underwritten by the Insurance Company of North America covering the full value of plaintiff's property in the amount of $26,100. This certificate provides:

The Company shall be subrogated to the extent of their payment for losses insured hereunder to all the Insured's rights of recovery against any person or organization, excepting the origin and destination freight forwarders and packers and their designated agents, who perform pick-up,

packing delivery and unpacking services in connection with the movement of the shipment.

The substance of this transaction was that the insurance was obtained for the benefit of both parties. It is unlikely that plaintiff would have agreed to such a low valuation for his goods if their full value had not been insured against loss or damage in transit. It is also unlikely that defendant would have undertaken to pack and forward the goods at the rate specified if they had not been fully insured. As noted in our discussion of the pre-emption question, the rule is well established that a carrier may base its rates on an agreed valuation and may charge a higher rate based on a higher valuation. *Adams Express Co. v. Croninger,* 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1912). The nominal valuation specified in the order for moving services and the parties' failure to fill in the valuation amount on the bill of lading can be understood only on the assumption that both parties contemplated that plaintiff would look to the insurance company rather than defendant or Columbia Packers to make good any additional loss. The exclusion of subrogation rights against defendant and Columbia Packers is another indication that the insurance was procured for the benefit of those parties as well as plaintiff. In effect, plaintiff paid the insurance company, rather than the defendant, to assume the risk of loss or damage in transit in excess of the nominal valuation declared in the contract. This situation is not within the rationale of the collateral source rule.

■ We see no reason why the principle forbidding more than one recovery for the same loss should not apply to an action brought under the Deceptive Trade Practices Act as well as to any other. Notwithstanding our holding that plaintiff's cause of action is separate and distinct from an action on the contract and that the contractual limitation of liability has no application, the fact remains that the actual loss complained of in this action is the same loss for which the parties have, by their contract, provided insurance. In accordance

with that contract, plaintiff has already been compensated for that loss to the extent of $11,009.22 by the insurance company, which is not entitled to subrogation. To deny application of the general principle here would permit plaintiff to collect the full amount of his loss from the insurance company and then have judgment for three times the same damages from defendant, thus recovering his damages fourfold. Consequently, we hold that the trial court erred in excluding from evidence the provisions of the contract concerning insurance, the insurance certificate, and the insurance payment received. Evidence of the premium paid by plaintiff was also admissible.

This holding does not ignore the no-waiver provision in section 17.42 of the Act. We give effect to that provision by permitting recovery of three times plaintiff's actual loss in excess of the insurance payment, notwithstanding the contractual limitation to a small or nominal amount. The contractual limitation is relevant only to show that the insurance coverage was an integral part of the entire contract between the parties and, consequently, not within the collateral source rule.

■ We note that defendant offered evidence of plaintiff's acceptance of the insurance payment on the additional ground that his claim and acceptance of a smaller amount than that asserted as damages in the present case was an admission that the amount of damages to his goods was not as great as that now claimed. Although defendant has not briefed this point on appeal, there is authority supporting this theory of admissibility. *Moore v. Dallas Ry. & T. Co.,* 238 S.W.2d 741 (Tex.Civ.App.— Amarillo 1951, writ dism'd). In this connection plaintiff argues that evidence of the insurance payment was properly excluded as a compromise of a doubtful claim, citing *Allen v. Avery,* 537 S.W.2d 789 (Tex.Civ. App.—Texarkana 1976, writ ref'd n. r. e.). The bill of exception shows, however, that the claim was not contested and that the insurance company paid the amount claimed in full. Consequently, evidence of the payment was not properly excluded on

that ground. Moreover, the principle forbidding more than one recovery for the same loss applies even though the earlier payment was the result of a compromise. *See Bradshaw v. Baylor University,* 126 Tex. 99, 84 S.W.2d 703 (1935).

■ Defendant suggests that we should reform the judgment by reducing it to the proper amount. We cannot, however, render judgment on the basis of evidence that was excluded by the trial court and appears in the record only in defendant's bill of exceptions. Consequently, we must remand the case for a proper determination of the damages. *First Nat'l Bank v. Fite,* 131 Tex. 523, 115 S.W.2d 1105, 1110 (1938); *Nast v. San Antonio, U. & G. Ry.,* 261 S.W. 1011, 1013 (Tex.Com.App.1924, holding approved); *Baldwin v. Willis,* 253 S.W.2d 287, 294 (Tex.Civ.App.—Beaumont 1952, writ ref'd n. r. e.). Since the damages are unliquidated and the liability issues are contested, we must remand the case for an entire new trial. Tex.R.Civ.P. 434. Accordingly, we turn to other points in appellant's brief and consider questions that probably will arise again in the trial court.

### 4. Form of Liability Issues

Defendant complains of the form of the issues submitted concerning the alleged deceptive trade practices. It asserts that the jury's answers to these issues will not support a judgment because they are too broad, are not ultimate fact issues, and do not submit the disputed issues of fact because the jury could have answered them affirmatively from the undisputed evidence.

Plaintiff contends that defendant failed to preserve the points by proper objections in the trial court, but we need not consider the sufficiency of the objections, since the case must be reversed on grounds already stated. We consider these points only as they bear on the issues to be submitted on another trial.

The issues complained of and the jury's answers to them are as follows:

### SPECIAL ISSUE NO. 1

DO YOU FIND from a preponderance of the evidence that defendant, American Transfer & Storage Company, represented to Plaintiff, Raymond Brown, that the moving services of American Transfer & Storage Company would include benefits and characteristics which they did not include?
ANSWER: We do.

### SPECIAL ISSUE NO. 2

DO YOU FIND from a preponderance of the evidence that the representation or representations inquired about in Special Issue No. 1 was a producing cause of any damage to Raymond Brown?
ANSWER: We do.

### SPECIAL ISSUE NO. 5

DO YOU FIND from a preponderance of the evidence that Defendant, American Transfer & Storage Company, represented to Plaintiff, Raymond Brown, that the moving services of American Transfer & Storage Company were of a particular standard, quality or grade, when in fact they were not?
ANSWER: We do.

### SPECIAL ISSUE NO. 6

DO YOU FIND from a preponderance of the evidence that the representation or representations inquired about in Special Issue No. 5 was a producing cause of any damage to Raymond Brown?
ANSWER: We do.

■ We agree that these issues are improper. As defendant points out, it is impossible to determine from the jury's answers which of the deceptive trade practices alleged occurred or which caused the damages found by the jury. Plaintiff alleged that he was induced to enter into the contract of transportation by the representation of defendant's agent Stanton that the contract for moving would be a "door-to-door" service, including careful packing, storage, movement, delivery, unpacking,

and placement in plaintiff's home in Fairbanks of all his furniture and personal belongings. Plaintiff also alleged that Stanton represented that there would be no hidden or unnecessary charges, that certain types of containers and vaults would be used to assure safe delivery, and that defendant was to be the principal mover in contracting and completing the move. Plaintiff further alleged that these representations as to characteristics, ingredients, benefits, or qualify of services to be rendered by defendant were false, misleading, and deceptive to plaintiff and damaged plaintiff in the amount of $23,200 as actual damages to his household goods, $1,050 to his automobile, $700 for loss of use of his automobile, and $5,000 for mental anguish.

Defendant points out that these issues do not establish that the deceptive trade practices found by the jury actually caused the loss of his goods. He points out that it was undisputed that plaintiff's goods were not unpacked and placed in their home in Fairbanks, as Stanton represented they would be, and that if the jury had found that this was the only false, misleading, and deceptive representation made by Stanton, the jury would still have had to answer the issues as it did, namely, that defendant represented that its moving services would include benefits and characteristics which they did not include and were of a particular standard, quality or grade when in fact they were not, and that both of these misrepresentations were a producing cause of "damage to Raymond Brown."

Defendant further contends that the proper method of submitting the issues is that prescribed by the supreme court in *Spradling v. Williams,* 566 S.W.2d 561, 564 (Tex.1978). As we read that opinion, it holds that in a deceptive trade practice case it is necessary to submit an issue inquiring whether the particular act or practice alleged occurred. *Spradling* further states that if the act or practice so submitted falls within any of the twenty subdivisions of section 17.46(b), then an affirmative finding establishes the deceptive trade practice, but that if the act or practice so submitted does not fall within any of those subdivisions,

another issue must be submitted inquiring whether the particular act or practice alleged is a deceptive trade practice, so as to bring it within subdivision (a) of section 17.46.

No such submission was made in the present case, since none of the acts or practices alleged in the petition were submitted to the jury. The jury was simply asked in the first issue whether defendant represented to plaintiff that defendant's services "would include benefits and characteristics which they did not include," without confining the jury's consideration to any particular representations. Likewise, the fifth issue inquired whether defendant represented to plaintiff that its services "were of a particular standard or grade when in fact they were not." Thus, the court, in effect, asked legal questions as to whether defendant violated subdivisions (5) and (7) of section 17.46(b) rather than making the factual inquiry of whether the alleged representations were made. It is the function of the court, rather than the jury, to apply the law to the facts and determine whether the representation found falls within any of the subdivisions of section 17.46(b). It is still improper, as it always has been, to submit to the jury a legal question without appropriate instructions. *Knutson v. Ripson,* 163 Tex. 312, 354 S.W.2d 575, 576 (1962); *Kunkel v. Poe Land & Development Co.,* 393 S.W.2d 191, 194 (Tex. Civ.App.—Corpus Christi 1965, no writ); *Foerster v. Louis Peoples,* 362 S.W.2d 918 (Tex.Civ.App.—Amarillo 1962, no writ).

Conceivably, the court could have phrased the issues as it did if it had also given appropriate accompanying instructions with respect to the representations raised by the pleadings and the evidence. *See Scott v. Atchison, T. & S.F. Ry.,* 572 S.W.2d 273, 278 (Tex.1978); *Scott v. Ingle Bros. Pacific, Inc.,* 489 S.W.2d 554, 557 (Tex. 1972). No such instructions were given, however, and, in any case, the better practice is to follow the procedure approved in *Spradling,* that is, to submit to the jury issues concerning the particular act or prac-

tice alleged to have been false, misleading, or deceptive. We direct that this method of submission be used on another trial and also that the issues be so phrased as to limit the jury's consideration of damages to those resulting from the acts or practices found to have been false, misleading, or deceptive. *Woods v. Littleton,* 554 S.W.2d 662, 671–72 (Tex.1977).

### 5. Property Damage

Defendant's principal complaint concerning the damage issue is that it did not inquire as to the damages to plaintiff's household goods and furniture at the time and place of the loss. The issue inquires the amount of money that "would reasonably compensate Raymond Brown for the damages, if any, to his household goods and furniture." An instruction accompanying this issue states that the measure of damages is "the cost to replace such household goods or furniture."

This point is not well taken in view of the special measure of damages applicable to loss of household goods and personal effects. The proper measure is not their market value as second-hand goods at the time and place of the loss, but their actual value to the owner in the condition in which they were at the time, excluding any fanciful or sentimental consideration. *Crisp v. National Ins. Co.,* 369 S.W.2d 326, 328 (Tex.1965); *American Transfer & Storage Co. v. Reichley,* 560 S.W.2d 196, 198 (Tex.Civ.App.—Amarillo 1978, writ ref'd n. r. e.). If the value of the goods to the owner is proved, and there is no evidence that to him they have a value at one place different from what they possessed at another, failure of the issue to limit the value to a particular time and place is not reversible error. *International & G. N. Ry. v. Nicholson,* 61 Tex. 550, 553 (1884).

The better practice, in our opinion, is to submit an issue containing by its terms the proper measure of damages rather than to submit an issue inquiring generally the amount of compensation that would be reasonable, even if such a general issue is accompanied by an appropriate instruction.

Consequently, we direct that on another trial the court submit an issue, in accordance with the *Crisp* opinion, inquiring the reduction in value to plaintiff of his household goods and furniture suffered by plaintiff as a result of his reliance on the deceptive trade practices, if any, found in answer to any of the preceding issues, excluding any fanciful or sentimental value.

In view of our remand for a new trial on other issues, we need not consider whether the evidence is sufficient to support the finding of damages.

### 6. Mental Anguish

Finally, defendant complains of the submission of an issue on mental anguish on the ground that there is no legal basis to support such a recovery. Defendant relies on cases holding that damages for mental anguish are recoverable only when the mental anguish is suffered in connection with actual physical harm or where defendant has committed a direct and intentional invasion of plaintiff's interest in personal security and peace of mind. *Duty v. General Finance Co.,* 154 Tex. 16, 273 S.W.2d 64, 65 (1954); *Harned v. E–Z Finance Co.,* 151 Tex. 641, 254 S.W.2d 81, 82 (1953); *Phillips v. Latham,* 523 S.W.2d 19, 27 (Tex.Civ.App.—Dallas 1975, writ ref'd n. r. e.).

Plaintiff does not challenge the principles stated in these cases, but insists that they are not applicable to actions brought under the Deceptive Trade Practices Act. He points out that section 17.44 requires that the Act be "liberally construed and applied to promote its underlying purpose, which is to protect consumer against false, misleading and deceptive business practices, unreasonable acts, and breaches of warranty and to provide efficient and economical procedures to secure such protection," and that section 17.50 gives a cause of action to a consumer "if he has been adversely affected" by such acts or practices. Consequently, plaintiff argues, the Act has the effect of creating a cause of action for mental anguish, regardless of whether the wrong complained of was a willful wrong or accompanied by other physical harm. He

cites Maxwell, *Public and Private Rights and Remedies under the Deceptive Trade Practices-Consumer Protection Act,* 8 St. Mary's Law J. 617 (1977), and relies also on *Woods v. Littleton,* 554 S.W.2d 662 (Tex. 1977).

■■■ This question was recently decided adversely to plaintiff's contention in *Dennis Weaver Chevrolet, Inc. v. Chadwick,* 575 S.W.2d 619 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.). In a scholarly opinion, Justice Keith points out that the Deceptive Trade Practices Act has not adopted the new tort of mental anguish, but, on the contrary, has left the damages recoverable under section 17.50 to be determined according to common-law rules. We agree with Justice Keith. The Act makes no mention of mental anguish. Section 17.50(a) provides that a consumer "may maintain an action if he has been adversely affected," and section 17.50(b) provides that in such a suit he may obtain "three times the actual damages." There is no definition of "actual damages," and no indication that this term extends to damages for mental anguish of the sort otherwise not recoverable unless for a willful tort or for an injury resulting in physical harm to the person. Consequently, our only guide to the meaning of the term "actual damages" is the settled rules of the common law.

■■■ Of course, the Act greatly enlarges the grounds on which damages are recoverable, and provides for trebling of actual damages, but, as we construe it, does not extend the scope of actual damages. We are unwilling to extend it by judicial fiat. The demands on the judicial system for reparation of substantial monetary losses are so great that only in exceptional circumstances should courts be required to take account of emotional distress unaccompanied by physical injury. If such damages are recoverable, then whenever a property loss is claimed, the plaintiff can always testify concerning his subjective reactions and thus inject an element of damage that can rarely be rebutted, has no monetary measure, and is subject to no limits but the sympathy of the jury and the conscience of

a reviewing court. *See Harned v. E–Z Finance Co.,* 151 Tex. 641, 254 S.W.2d 81, 86 (1953).

We recognize that the intention of the Act is to allow a greater recovery of damages for deceptive trade practices than permitted by common law, but, in our view, that intention was fully expressed in the provision for trebling the actual damages proved under common-law rules applicable to the type of loss shown by the evidence. We do not think the Act can be fairly read as providing that where, as in this case, the actual loss sustained was to property, the consumer may have an additional recovery for his mental anguish caused by that loss, and that this recovery, as well as his recovery for the actual loss, must then be trebled to impose a penalty substantially in excess of three times the property loss sustained. Consequently, we hold that the issue concerning mental anguish was improperly submitted to the jury and should not be submitted at another trial.

We also agree with Justice Keith's view that this question was not before the Supreme Court in *Woods v. Littleton,* 554 S.W.2d 662 (Tex.1977). Plaintiff does not contend that the question was expressly decided in *Woods,* but argues that *Woods* controls because it assumes that mental anguish is a recoverable item of damages under the Act and remands the case for a proper determination of such damages. As the opinion of the court of civil appeals in that case shows, the objection to the mental anguish issue was that the issue did not limit the damage to that which the defendant's acts produced or proximately caused. The court of civil appeals sustained this objection and remanded the case on that ground, expressly stating that it did not reach the question of recovery of damages for mental anguish. *Littleton v. Woods,* 538 S.W.2d 800, 802 (Tex.Civ.App.—Texarkana 1976). That judgment was affirmed by the supreme court, which expressly approved the holding that the mental anguish issue was defective. *Woods v. Littleton,* 554 S.W.2d 662, 672 (Tex.1977). The supreme court's main concerns were whether

the Act applied to a transaction that occurred before its effective date and whether its provision for treble damages was mandatory. The question of whether mental anguish is recoverable under the Act, if not otherwise recoverable by law, was not raised, so far as the opinion shows. Consequently, no expression of the court's view on this question was required, or even appropriate, and the court expressed no such view, even by way of obiter dictum.

■ Although our duty is to apply the law as decided and declared by the supreme court, we are not bound by assumptions and implications in its opinions. Justice in the particular case, as well as rational and orderly development of the law, demands that the doctrine of stare decisis be limited to questions raised and decided on full consideration. *Grigsby v. Reib,* 105 Tex. 597, 153 S.W. 1124 (1913); *State v. School Trustees of Shelby County,* 150 Tex. 238, 239 S.W.2d 777 (1951); *State v. J. M. Huber Corp.,* 193 S.W.2d 882 (Tex.Civ.App.—Austin 1946), *affirmed,* 145 Tex. 517, 199 S.W.2d 501 (1947). Otherwise, application of precedents to cases without such full consideration would inevitably result in anomaly and injustice. Consequently, we consider ourselves free in this case to construe the Act in question in accordance with our own determination of the intention of the legislature as expressed in the Act and in the light of pre-existing law.

Because of the error of the court in excluding evidence of the insurance coverage and insurance payment, the judgment of the trial court is reversed and the cause is remanded for another trial in accordance with the directions in this opinion.

Reversed and remanded.