[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED FEBRUARY 7, 1997
The plaintiff, Chuck Bonnell, filed this action against United Parcel Service, Inc. (hereinafter UPS), claiming breach of contract, negligence, misrepresentation, and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes 42-110, et seq. This action arises out of a shipping transaction between Bonnell and UPS in which Bonnell shipped fifty-five boxes allegedly C.O.D. and UPS delivered fifty-four of the boxes but did not collect any payment.
Testimony at trial revealed that until 1991, Bonnell owned three video rental stores located in Ridgefield, West Redding and Madison, Connecticut. Beginning in 1991, Bonnell began to close down his stores and sell the inventory. In 1993, Bonnell closed his Ridgefield store and sold the inventory to David Parks, a video distributor located in Concord, North Carolina. Parks agreed to purchase approximately 5000 video tapes from Bonnell, which Bonnell was to ship to Parks.
On June 25, 1993, Bonnell brought fifty-five boxes containing the video tapes to UPS for C.O.D. shipment to North Carolina. Bonnell informed the UPS counter clerk that he wanted to ship the boxes C.O.D., with $17,128.97 due on delivery, payable by the addressee via certified check or cash. The clerk told Bonnell to fill out and affix a C.O.D. tag to each box, including the sum to be collected. Bonnell objected, stating that when he closed down his West Redding store in 1991, he shipped twenty-seven boxes C.O.D. and used only one tag. After speaking with her supervisor CT Page 1871 in another room, the clerk, as testified by Bonnell, stated that he could fill out one C.O.D. tag and number each box consecutively "1 of 55, 2 of 55," et cetera. Bonnell filled out one C.O.D. tag, labeled the boxes "1 of 55, 2 of 55." et cetera, and paid a shipping fee of $756.17.
When the UPS driver delivered the fifty-five boxes to Parks, Parks accepted fifty-four of the boxes, rejected the one box with the C.O.D. tag, and failed to pay any money to the driver.
"As an interstate carrier, UPS and [shipping transactions] are governed by the Interstate Commerce Act,49 U.S.C.A. § 10101, et seq. [hereinafter the Carmack Amendment]. Therefore, Federal law applies." Wave Electronics v. UPS, 254 N.J. Super. 201,203, 603 A.2d 143 (1991). "The subject matter of the [Carmack A]mendment is contracts for interstate transportation of property and the liability of carriers for breach of such contracts." American Transfer Storage Co. v. Brown,584 S.W.2d 284, 288 (Tex.Civ.App. 1979). The Carmack Amendment "permits a carrier to provide transportation services only in accordance with the duly published tariff, to which the parties are bound. . . The tariff operates as law which all parties are deemed to have knowledge of." Wave Electronics v. UPS, supra.
"It is well settled that a tariff has the force of law and that a shipper and a carrier are bound by its terms and cannot vary those terms." TADMS, Inc. v. Consolidated Freightways619 F. Sup. 385, 390 (D.C. Cal. 1985). "The terms of a tariff must be followed with strict adherence, with the rights it creates neither varied nor enlarged. Courts have consistently prevented parties from waiving or altering tariff provisions." Carmack v.United Parcel Service, 701 F. Sup. 641, 643 (N.D. Ill. 1988), citing Davis v. Henderson, 266 U.S. 92, 93, 45 S.Ct. 24,69 L.Ed. 182 (1924). Therefore, for example, "[t]he published tariff must be followed even if a shipper was quoted a different price by a carrier . . . or even if there exists a contract providing for shipment at a different rate or price . . . Individual hardship is not a defense to the application of published tariffs." (Citations omitted.) TADMS, Inc. v. Consolidated Freightways,supra.
The tariff published by UPS, United Parcel Service Tariff (a New York corporation), ICC UPSN 201-5 (hereinafter the "tariff"), provides in reference to the preparation and listing of C.O.D. packages that: "[t]he shipper will prepare and attach to each CT Page 1872 C.O.D. package a C.O.D. tag showing the amount to be collected and will enter such amount on the pickup sheet of the carrier in the space provided for the purpose." Tariff, item 480. The tariff provides further that "[t]he carrier will collect for C.O.D. merchandise the sum of money shown on the C.O.D. tag attached to the package . . . or, if collection cannot be made, will return the merchandise to the shipper." Id.
This court finds that the tariff has the full force and effect of law and serves as the shipping contract between the parties, and that the parties are bound by, and cannot alter the terms of the tariff. See, e.g., Comark v. United Parcel Service,supra, 701 F. Sup. 643; TADMS, Inc. v. Consolidated Freightways,supra, 619 F. Sup. 390. The court finds further that Bonnell did not comply with the C.O.D. shipping requirements provided by the tariff in item 480 and, therefore, cannot prevail on a claim of breach of contract against UPS.
Bonnell argues that because UPS informed him that he could ship the boxes in the manner at issue, the tariff is not controlling between the parties, rather, the governing contract is the alternative shipping agreement made between Bonnell and UPS. However, the court finds that in light of the federal law mandating the strict application and invariable nature of the tariff, Bonnell's argument cannot prevail. Even though, as Bonnell claims, UPS may have permitted him to employ an alternative shipping method not provided for in the tariff, federal law is quite clear that: (1) the tariff is controlling,TADMS, Inc. v. Consolidated Freightways, supra, 619 F. Sup. 390;Wave Electronics v. United Parcel Service, Inc., supra, 254 N.J. Super. 203; (2) all parties are deemed to have knowledge of the tariff, Wave Electronics v. United Parcel Service, Inc., supra;
and (3) the provisions of the tariff cannot be altered or waived,Comark v. United Parcel Service, Inc., supra, 701 F. Sup. 643;TADMS, Inc. v. Consolidated Freightways, supra, 619 F. Sup. 390. Therefore, regardless of any discussions that may have transpired between Bonnell and UPS, Bonnell cannot prevail on his claim that another contract apart from the tariff existed and was breached by UPS.
"The essential elements of a cause of action in negligence are well established: duty: breach of that duty: causation: and actual injury." RK Constructors Inc. v. Fusco Corp.,231 Conn. 381, 384 (1994) . "A duty . . . may arise from a contract, from a statute, or from circumstances under which a reasonable person, CT Page 1873 knowing what he knew or should have known, would anticipate that harm . . . was likely to result from his act or failure to act." (Citations omitted: internal quotation marks omitted.) Burns v.Board of Education, 228 Conn. 640, 646 (1994). The court heard the plaintiff's testimony in which he stated he arrived at the UPS depot on June 25, 1993 at 6 p. m. He was alone in his van and started unloading. Three people including his daughter, a friend and Mr. Zipparo, joined him as he was unloading the boxes containing the videos and they helped him finish the unloading. He then went to the counter and spoke with a female clerk informing her that he wished to send the boxes C.O.D. She replied that a C.O.D. tag must be placed on each box. At that point, he informed her of a previous shipment with UPS in which only one tag was placed on the several boxes. The plaintiff next testified that the clerk said she would check and, when she returned, informed him to label the boxes 1/55, 2/55, et cetera with the C.O.D. tag on the first box. He did what the UPS clerk told him. However, he further testified he left before everything was done, and left a check with his employee, Zipparo, who was to insert the amount of the shipping costs and finish the shipping process, as he was anxious to return the rental truck. "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised." (Citations omitted internal quotation marks omitted.) Id., 647. The court finds that the UPS representative was not negligent, and would not foresee the harm that was occasioned to the plaintiff by the addressee's wrongful act in accepting all but one box and not paying the agreed price for them.
However, even assuming that there was some negligent statement made by the UPS clerk in speaking with the plaintiff about labeling the boxes, the court finds that the entire process of numbering the boxes, et cetera, was performed by the plaintiff and his employee. The plaintiff could easily have written the amount to be collected on each box as he numbered them. As testified by Wilburn Prude, the district sales manager for UPS, each package is a separate transaction and as such, each package must be tagged. It is inconceivable to the court that the plaintiff would not recognize that the fifty-five packages might be separated and not delivered simultaneously. Therefore, the plaintiff was negligent himself in not placing a C.O.D. tag on each package or including the amount on each numbered package. In negligence actions to recover for certain types of injury, Connecticut has adopted the rule of comparative negligence. General Statutes § 52-572h(b); Williams Ford, Inc. v.CT Page 1874Hartford Courant Co., 232 Conn. 559, 580-81, 585 (1995). Section 52-572h(b) provides in pertinent part that "[i]n causes of action based on negligence, contributory negligence shall not bar recovery in an action . . . to recover damages resulting from personal injury, wrongful death or damage to property if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought . . . The . . . damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering . . ." "The purpose of the comparative negligence statute was to replace the former rule, under which contributory negligence acted as a complete defense, with a rule under which contributory negligence would operate merely to diminish recovery . . . based upon the degree of the plaintiffs own negligence." Williams Ford, Inc. v. Hartford Courant Co., supra,
585-86.
The reference in § 52-572h(b) to "damage to property" includes damages to or loss of the use of some tangible property.Williams Ford, Inc. v. Hartford Courant Co., supra,232 Conn. 581. Moreover, as a matter of common law, "the policy of the comparative negligence statute . . . applies to negligence actions where only commercial losses are sustained." Id., 586. Finally, under § 52-572h(b) and common law principles, the doctrine of contributory negligence does not act as an absolute bar to recovery for plaintiffs seeking recovery for negligent misrepresentation. Id. This court finds that the plaintiff Bonnell's negligence exceeded that of the defendant and he is barred from recovery on the negligence count. The court finds that Bonnell could have simply written the amount to be collected on each package and, furthermore, that he left the UPS facility before the delivery transaction was completed instructing his employee to finish the transaction.
"[T]he Carmack Amendment preempts only those state common [law] or statutory claims premised upon liability of an interstate . . . carrier for damages or loss to goods being transported in interstate commerce . . . [but not] mistake or fraud in the formation of the contract . . ." Sokhos v. MayflowerTransit, Inc., 691 F. Sup. 1578, 1581-82 (D. Mass. 1988).
The essential elements of an action in fraud or fraudulent misrepresentation are that: "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it: (3) it was made to induce the other party CT Page 1875 to act upon it; and (4) the other party did so act upon that false representation to his injury." Barbara Weisman, Trustee v.Kaspar, 233 Conn. 531, 539 (1991) (fraud). See also Dorsey v.Mancuso, 23 Conn. App. 629, 633 (1990) (fraudulent misrepresentation). "The party asserting such a cause of action must prove the existence of the first three of these elements by a standard higher than the usual fair preponderance of the evidence, which higher standard we have described as `clear and satisfactory' or `clear, precise and unequivocal.'" (Citations omitted; internal quotation marks omitted.) Weisman v. Kaspar,supra, 540. The court finds that the misstatement, if any, as testified by the plaintiff and attributed to the UPS clerk did not rise to the level of a fraudulent misrepresentation.
Whereas, "[t]he elements of innocent misrepresentation are[:] (1) a representation of material fact[;] (2) made for the purpose of inducing the purchase[;] (3) the representation is untrue, and (4) there is justifiable reliance by the plaintiff on the representation by the defendant[;] and (5) damages." Frimbergerv. Anzellotti, 25 Conn. App. 401, 410 (1991), citing Johnson v.Healy, 176 Conn. 97 (1978). Moreover, an innocent misrepresentation of fact may be actionable as negligent misrepresentation "if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." (Citations omitted; internal quotation marks omitted.) Williams Ford, Inc.v. The Hartford Courant Co., 232 Conn. 559, 575 (1995). The court refers to its earlier finding of facts as to the transaction which occurred between the plaintiff and the UPS clerk. In addition, the court finds that the UPS clerk did not intend to induce the plaintiff to follow the procedure which he used in labeling the fifty-five boxes, or that there was justifiable reliance by the plaintiff on the UPS clerk's statement as it was he who initiated the change in labeling after being advised to place a C.O.D. sticker on each package.
As to the CUTPA count brought by the plaintiff, our courts have stated: "[c]omprehensive though the Carmack Amendment may be in its regulation of contracts . . . claims . . ., we conclude that deceptive trade practices, except possibly to the limited extent of misrepresentations affecting the applicable rate, do not fall within the ambit of federal regulation." AmericanTransfer Storage Co. v. Brown, supra, 584 S.W.2d 288. Therefore, state law governs Bonnell's unfair and deceptive trade practices claim. CT Page 1876
General Statutes § 42-110b(a) provides in pertinent part that: "[n]o person shall engage in . . . unfair or deceptive acts or practices in the conduct of any trade or [business]." "[A]n act or practice is deceptive if three requirements are met. First, there must be a representation, omission, or other practice likely to mislead consumers. Second, the consumers must interpret the message reasonably under the circumstances. Third, the misleading representation, omission, or practice must be material — that is, likely to affect consumer decisions or conduct." (Citation omitted; internal quotation marks omitted; footnote omitted.) Caldor, Inc. v. Heslin, 215 Conn. 590, 597
(1990). "[A] party need not prove an intent to deceive to prevail under CUTPA." Jacobs v. Healey Ford-Subaru, Inc., 231 Conn. 707,726 (1995), citing Web Press Services Corporation v. New LondonMotors, Inc., 203 Conn. 342, 363 (1987) (concluding that knowledge of falsity, either constructive or actual, need not be proven to establish a CUTPA violation).[1]
Furthermore, to violate CUTPA, the act or practice complained of must have been in the conduct or trade of commerce as defined in the act. It is unclear whether a single unfair or deceptive act can constitute a CUTPA violation or whether the plaintiff must prove a pattern or practice of unfair and deceptive conduct. This uncertainty arises from an inconsistency in the statutory language of CUTPA. General Statutes § 42-110b(a), the section that prohibits unfair trade practices, refers to the plural "unfair or deceptive acts or practices," while General Statutes § 42-110g(a), the section that creates a cause of action for CUTPA violations, refers to the singular "method, act or practice." This inconsistency in the statutory language has lead to a split of authority at the Superior Court level regarding whether a single act can constitute a CUTPA violation. The Appellate Courts have yet to rule on this issue. "While there is a split of authority, the majority of superior court decisions . . . have held that a litigant does not need to allege more than a single act of misconduct in order to bring an action under CUTPA." (Citations omitted; internal quotation marks omitted.) Hernandez v. King, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 536321,16 CONN. L. RPTR. 65 (January 29, 1996, Hennessey, J.) (holding that a single act can provide a basis for a CUTPA claim).[2]
The CUTPA claim alleged by Bonnell in the present case appears to be based on UPS's alleged breach of the C.O.D. shipping contract to deliver the fifty-five boxes to the CT Page 1877 addressee only upon receipt of $17,128.97 in return for the delivery. (Plaintiff's Complaint, count four.) "A majority of [Superior Court] cases support the claim that [a] simple breach of contract, even if intentional, does not amount to a violation of [CUTPA]; a [claimant] must show substantial aggravating circumstances to recover under the Act." (Internal quotation marks omitted.) The Production Equipment Co. v. Blakeslee ArpaiaChapman, Inc., Superior Court, judicial district of New Haven at Meriden, (January 3, 1996, Silbert, J., 15 CONN. L. RPTR. 558), citing Emlee Equipment Leasing Corporation v. WaterburyTransmission, Inc., 41 Conn. Sup. 575, 580, 3 CONN. L. RPTR. 711
(1991). However, in Lester v. Resort Camplands International,Inc., 27 Conn. App. 59, 71 (1992), the court stated that "the same facts that establish a breach of contract claim may be sufficient to establish a CUTPA violation." For example, in CNFConstructors, Inc. v. Culligan Water Conditioning Co., Superior Court, judicial district of New Haven at Meriden, Docket No. 242302 (September 9, 1993, Blue, J., 8 CSCR 1057, 1058), the court permitted a CUTPA claim to survive a motion to strike on the strength of several allegations of misrepresentation because the plaintiff pleaded "more than a simple breach of contract." See also The Production Equipment Co. v. Blakeslee ArpaiaChapman, Inc., supra, (holding that a plaintiff's CUTPA count should be stricken if it alleges merely a breach of contract absent any fraud, or unfair or deceptive conduct).
It appears to this court that the cases holding that a single act can constitute a CUTPA violation are better reasoned in light of principles of statutory construction and the remedial intent of the act. Furthermore. the evidence in this case demonstrated that, at least with regards to this plaintiff, the activity complained of occurred once before when the plaintiff mailed twenty-seven boxes marked 1 of 27, 2 of 27, et cetera. However, despite this fact or allegation, this court finds that the alleged misstatement made by the UPS clerk does not equate with a deceptive practice and, accordingly, does not find that the plaintiff has proven its claim under CUTPA.
Accordingly, judgment may enter for the defendants on all counts.
GROGINS, J.