[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
During the month of October 1997, the personal injury case of plaintiff, Robert L. Petro, was tried to a jury. The jury returned a verdict in favor of both defendants, K-Mart Corporation (K-Mart) and Developers Diversified Management, Inc. ("Diversified"). In the underlying action, Petro sought damages for injuries he allegedly suffered when he tripped and fell over an overturned K-Mart shopping cart in the parking lot of the K-Mart store located at 881 Wolcott Street in Waterbury, Connecticut.
Prior to trial, counsel for the co-defendants stipulated to certain facts and exhibits and reserved to the court the determination of the remaining claims that each had against the other. As neither defendant was found liable to the plaintiff, their respective claims for Indemnification and Apportionment were rendered moot. However, both seek indemnification for attorneys fees and costs resulting from the defense of the underlying action. Additionally, K-Mart seeks punitive damages under fraud and CUTPA counts of its third party complaint.
Clearly all of these claims arise from a dispute over the interpretation of certain provisions in their lease agreement. These provisions include the following:
Paragraph 29 of the lease provides:
 "During the lease term Tenant shall indemnify and save Landlord . . . harmless against all penalties, claims or demands of whatsoever nature arising from Tenant's use of the Tenant's buildings except those which shall result, in whole or in part, directly or indirectly, from the default or negligence of Landlord . . ."
Additionally, paragraph 15(c) of the lease charges the tenant with responsibility for sweeping, striping, and snow and ice removal from all driveways, sidewalks, street and parking areas.
Further, paragraph 15A of the rider to the lease provides:
 "It is recognized that Tenant shall be responsible for cleaning, sweeping, and snow removal associated with the parking areas . . ."
It is upon these provisions that Diversified relies for the basis of its claim while K-Mart primarily looks to the following for support. CT Page 1559
Article 1 of the Lease sets forth the "Demised Premises." Said premises include the "Tenant's completed building" which is designated as "K-Mart" on Exhibit "B" to the Lease, and "site improvements" constructed by the Landlord.
Article 10 of the Lease, entitled "Parking and Other Common Areas," requires the Landlord to construct "all of the sidewalks, service drives, parking areas, driveways, streets, curbs . . . and related improvements." These improvements are referred to as the "common areas." With respect to said common areas, Article 10 also provides that:
 During the lease term, Landlord shall keep Tenant insured against all statutory and common law liabilities for damages on account of damage to property or injuries and loss of life sustained by any person or person while within said common areas, in a policy or policies in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) with respect to injury to any one person and in the amount of One Million dollars ($1,000,000.00) with respect to any one accident or disaster, and in the amount of One Hundred Thousand Dollars ($100,000.00) with respect to damage to property; and Landlord shall also indemnify and save Tenant harmless against any such liability. Any such policies shall bear endorsements to the effect that Tenant shall be notified not less than five (5) days in advance of any modification or cancellation thereof. Copies of such policies, so endorsed, or certificates evidencing the existence thereof, shall be promptly delivered to Tenant upon written request therefor.
Certainly, "a lease is a contract. In construing it, three elementary principles must be kept constantly in mind: (1) The intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such manner as to give effect to every provision, if reasonably possible. If the language is ambiguous, the construction which favors the lessee should be adopted. Furthermore, an unexpressed intent is of no significance. The controlling factor is the intent expressed in the lease, not the intent CT Page 1560 which the parties may have had or which the court believes they ought to have had." Ingalls v. Roger Smith Hotels Corp. ,143 Conn. 1, 6 (1955) (internal citations omitted).
In review, Diversified's claim for indemnification is unavailing. Under the terms of the lease, K-Mart is only obligated to indemnify when third party claims or demands arise out of its use of its building. Diversified supports its claim by relying on the allegation of plaintiff, Petro's, complaint. In light of the defendants' verdict returned by the jury with respect to same, however, those allegations, can be accorded no weight. They can neither be accepted as, nor assumed to be true and, therefore, cannot serve as the necessary predicate to trigger the indemnification provision of paragraph 29 of the lease. Unfortunately, this resolution does not resolve future controversy between the parties regarding claims arising out of K-Mart's use of its building extending into the parking lot and contrary lease provisions concerning accidents in common areas. At this time, only renegotiated non-conflicting lease provisions will accomplish this end.
In review of K-Mart's claims against Diversified including Breach of Contract, Fraud and CUTPA violations, and in light of the foregone, the court finds only the first of the three to be meritorious.
The provisions of Article 10, set out above, require Diversified to provide K-Mart with insurance coverage for accidents occurring within common areas and, as evidence of that coverage, Diversified initially provided K-Mart with a Certificate of Insurance indicating that K-Mart was an additional insured under a general liability policy with Centennial Insurance Company. Subsequently, Diversified disclosed a claim service agreement with Centennial indicating that, without notice to K-Mart, it had initiated a program of self-insurance. Pursuant to the terms of this agreement Centennial was only required to provide Diversified with certain claims services.
By virtue of its obligations under Article 10 of the lease and its declarations, Diversified as a self-insurer stepped into the shoes of the insurance company which would otherwise be providing coverage to K-Mart. As a result of this, Diversified's obligation to K-Mart involves two major components: the duty to defend and the duty to indemnify. It CT Page 1561 is axiomatic that the duty to defend is broader than the duty to indemnify. A purchaser of insurance is entitled to freedom from the burdens, costs, and expenses of suit as well as freedom from liability. Accordingly, the duty to defend arises when a complaint states a cause of action which, on its face, is within the terms of the policy or sets forth facts appearing to bring the injury within the policy coverage. An insurer may not refuse to defend on the ground that the allegations in the complaint are groundless or without merit. There are numerous Connecticut cases standing for these basic principles. General Accident Group v. Gagliardi, 593 F. Sup. 1080
(D. Conn. 1984), affirmed 767 F.2d 907; Sacharko v. CenterEquities L.P., 2 Conn. App. 439 (1980); Clinton v. Aetna Cas. Surety Co., 41 Conn. Sup. 560 (1991); Missionaries of theCompany of Mary Inc. v. Aetna Cas. Surety Co., 155 Conn. 104
(1967); Andover v. Hartford Accident and Indemnity Co.,153 Conn. 439 (1966).
While Developers Diversified may dispute the terms of the Lease Agreement, Connecticut law is clear that the duty to defend is not triggered when the party owing said duty is able to conduct a lengthy investigation to determine its liability. Instead, the duty to defend is triggered upon the receipt of a complaint which, on its face, alleges facts sufficient to bring the cause of action within the scope of coverage. The traditional means by which an initial coverage analysis is performed is by a comparison of the allegations in the complaint to the language of the insurance policy. The general rule is that an insurer must evaluate its duty to defend by reference to the four corners of the complaint and may not avoid the duty to defend by looking beyond the allegations of the complaint and by importing facts learned from outside sources. Missionaries of the Company of Mary, Inc. v. AetnaCas. Sur. Co., supra, 155 Conn. at 111-113. Only when the insurer can confine the claim outside the coverage, may it avoid an obligation to defend. Aetna, supra at 550, citingLee v. Aetna Cas. Sur. Co., 178 F.2d 750 (2d Cir. 1949).
As the Connecticut Appellate Court has recently stated, "if an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." Swartz v. Stevenson, 37 Conn. App. 581, 585 (1995). "The seriousness with which the courts take this duty is exemplified by the fact that the duty to defend must be exercised regardless of whether the original suit is totally CT Page 1562 groundless or regardless of whether, after full investigation, the insurer got information which categorically demonstrates that the alleged injury is not in fact covered." Lee v. AetnaCasualty Surety Insurance Company, 173 F.2d 750, 751 (2d Cir. 1949).
Clearly Diversified was obligated to defend K-Mart in the underlying action and failed to so, consequently, it breached its obligation under the lease. However, the acts or omissions occasioning the breach were predicated upon diversified's good faith interpretation of the lease. Neither this simple breach of contract nor the delay in providing K-Mart with information regarding insurance or self-insurance amounts to Fraud or a CUTPA violation.
A majority of Superior Court cases support the claim that
 "[a] simple breach of contract, even if intentional, does not amount to a violation of [CUTPA]; a [claimant] must show substantial aggravating circumstances to recover under the Act."
 Emlee Equipment Leasing Corp. v. Waterbury Transmission. Inc.,41 Conn. Sup. 575, 580, 595 A.2d 951, (1991, Blue, J.); see also Bonnell v. United Parcel Service, Superior Court, judicial district of Danbury, Docket No. 315927 (February 7, 1997, Grogins, J.) (18 Conn. L. Rptr. 646);The Production Equipment Co. v. Blakeslee Arpaia Chapman Inc., Superior Court, judicial district of New Haven at Meriden, Docket No. 247485 (January 3, 1996, Silbert, J.) (15 Conn. L. Rptr. 558); LoMonte v. Rice, Superior Court, judicial district of Hartford at New Britain, Docket No. 441735 (January 30, 191, Aronson, J.) (3 Conn. L. Rptr. 189);Central Delivery Service of Washington, Inc. v. People's Bank, Superior Court, judicial district of Hartford at New Britain, Docket No. 438015 (October 1, 1990, Goldberg, S.J.) (2 Conn. L. Rptr. 449); Jarasekv. Chrysler House Associates Limited Partnership, Superior court, judicial district of Hartford, Docket No. 338598 (December 2, 1988, O'Connor, J.) (4 CSCR 73).
In accord with the foregoing, the court determines the issues contained in K-Mart's Second Amended Third-Party Complaint as follows:
Counts one and two are deemed moot; as to count three, Breach of Contract, the issues are found for K-Mart; as to count four, CUTPA violation and count five, Fraud, the issues are found for Diversified, and as to Diversified's special CT Page 1563 defense, the issues are found for K-Mart.
Further, the court finds the sum of $17,075.00 to be fair, just and reasonable compensation for K-Mart's loses resulting from Diversified's breach of contract and, therefore, awards same as damages.
It is ordered that judgment will enter as set out above, together with costs.
WEST, J.