986 F.2d 700
 1993 A.M.C. 1861, 24 Fed.R.Serv.3d 1481
 Ting-Hwa SHAO, Plaintiff-Appellant,
v.
LINK CARGO (TAIWAN) LIMITED; Abacus Transports and
Forwarder, Limited; Inhouse Trucking Company;
International Warehouse Distribution Corporation; MICC
Venture, A Florida Joint Venture/General Partnership; Sea
Horse Container Lines; Western Overseas Corporation,
Defendants-Appellees.
and
Groat Brothers, Incorporated, Defendant.
 No. 92-1533.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 28, 1992.
Decided Feb. 22, 1993.
 
 Frederic Willard Schwartz, Jr., Washington, DC, argued for plaintiff-appellant.
 Steven A. Fein, Hyman & Kaplan, P.A., Miami, FL, argued (Edoardo Meloni, on brief), for defendants-appellees.
 Before MURNAGHAN, NIEMEYER, and HAMILTON, Circuit Judges.
 OPINION
 NIEMEYER, Circuit Judge:
 
 
 1
 Ting-Hwa Shao contracted with Link Cargo (Taiwan) Ltd. and Abacus Transports and Forwarder, Ltd., in Taipei, Taiwan, to have his personal belongings shipped from Taiwan to Baltimore, Maryland. The goods were transported by ship to Long Beach, California, where a customs number was assigned to the shipment, and then forwarded, inadvertently, to a warehouse in Miami, Florida. On September 3, 1988, a fire destroyed the warehouse and Shao's goods. Over two years later Shao filed suit in the District of Maryland to recover the damages, alleging negligence and breach of contract. He named as defendants Link Cargo, Abacus Transports, and six other parties who were involved in the transportation and storage of his goods. Only three defendants were served, and after one was voluntarily dismissed for not having been involved,[1] only Sea Horse Container Lines, which the complaint alleges arranged for the loading of the goods onto a ship in Taiwan, and Western Overseas Corp., which acted as customs broker in Long Beach, remain as parties.
 
 
 2
 On the motion of the defendants who were served, the district court ruled that plaintiff's common law claims were preempted by the Carmack Amendment, 49 U.S.C. § 11707, and then barred by the statute of limitations contained in 49 U.S.C. § 11706(c)(1). The court dismissed the claims against the remaining defendants for lack of service, pursuant to Federal Rule of Civil Procedure 4(j) and Maryland Rule 103(8)(a).
 
 
 3
 On appeal Shao contends that the Carmack Amendment does not preempt state common law remedies for the negligent loss of shipped goods and in any event that the two-year statute of limitations applied by the court would not be applicable to a Carmack Amendment claim. He also contends that the court abused its discretion in dismissing the remaining defendants and that he should be allowed to "continue to search for and properly serve them."
 
 
 4
 At oral argument on appeal, Sea Horse and Western Overseas conceded Shao's argument that the statute of limitations from 49 U.S.C. § 11706(c)(1) does not apply to a claim under the Carmack Amendment. In a radical departure from the position taken in their brief, however, they contended for the first time that the Carmack Amendment did not apply at all because the shipment originated outside of the United States and beyond the jurisdiction of the Interstate Commerce Commission. In view of the new argument, Sea Horse and Western Overseas contended that the preemption issue need not be reached. The problem presented by the new issue is compounded because this case was decided essentially on the complaint, and the record contains few, if any, of the facts necessary for a proper resolution of the issues now raised.
 
 
 5
 While we conclude that the district court correctly ruled that the Carmack Amendment would preempt common law claims in connection with shipments covered by a United States bill of lading, the factual circumstances of this case are not sufficiently developed to determine whether this shipment was governed by the Carmack Amendment. We therefore remand the case for determination of this threshold jurisdictional issue. We also conclude that if the Carmack Amendment does, in fact, govern this transaction, the statute of limitations contained in § 11706(c)(1) does not apply. Finally, we affirm the district court's dismissal of the defendants not served.
 
 
 6
 * The record in this case consists essentially of the complaint filed by Ting-Hwa Shao to recover $250,000 in damages occasioned by the loss of his personal belongings in the Miami fire. Only two documents have been made part of the record, a Western Overseas manifest of goods prepared for the purpose of obtaining a customs number in Long Beach, California, and a paper directing release of the goods from a Miami warehouse for shipment to Baltimore because the shipment had been "mistakenly sent to Miami."
 
 
 7
 The complaint, which asserts jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332, alleges that plaintiff retained Chang-Jye Liou, purportedly an agent for Link Cargo and Abacus Transports, to arrange for the shipment of ten cartons of personal effects from Taipei, Taiwan, to Baltimore, Maryland. It alleges that the goods were loaded onto a ship on June 1, 1988, (under the auspices of Sea Horse), and off-loaded in Long Beach, California, where the shipment was given a customs number. The complaint further alleges that the defendant Groat Brothers, Inc. (now dismissed from the case) contracted to transport the shipment "in bond" to Baltimore, where it would be cleared for customs, but that the shipment was instead delivered by mistake to a Miami, Florida warehouse, where it was destroyed by fire. The complaint also alleges that the defendants who were involved in the shipment and storage of the goods were negligent and in breach of their contract "to choose appropriate carriers, to prepare proper and correct documentation and to transport the shipment to Baltimore." Finally, the complaint alleges that two defendants (who have not been served) were negligent in storing or permitting the storage of the goods with hazardous materials in the warehouse in Miami. Sea Horse and Western Overseas are not alleged to have participated in the negligence involving the warehouse storage.
 
 
 8
 On motions of Sea Horse, Western Overseas, and Groat Brothers, the district court ruled that the Carmack Amendment, 49 U.S.C. § 11707, preempted the plaintiff's state common law claims, and that the complaint, although couched in terms of common law rights, sufficiently stated a claim under the federal statute. The court then found that the plaintiff's Carmack Amendment claim was barred by 49 U.S.C. § 11706(c)(1), which requires a claimant to file with the Interstate Commerce Commission within two years of the date a claim accrues under 49 U.S.C. § 11705(b)(2) (which governs liability for damages sustained by a person as a result of an act or omission of a carrier). Finally, pursuant to Federal Rule of Civil Procedure 4(j) and Maryland Rule 103(8)(a), the district court dismissed the unserved defendants for the plaintiff's failure, notwithstanding repeated extensions given by the court, to serve them with process.
 
 II
 
 9
 In the proceeding before the district court, the defendants Sea Horse and Western Overseas and the now-dismissed defendant Groat Brothers argued that the Carmack Amendment preempted plaintiff's common law claims, an assertion with which the district court agreed. That issue is the principal one briefed and argued by the parties on appeal and is the threshold question for reaching other issues under the Carmack Amendment. While it would appear obvious that we must address the question, doubt is created by the contention of Sea Horse and Western Overseas, first advanced at oral argument, that the Carmack Amendment does not apply at all because the shipment originated outside of the United States. That contention was not made in the district court nor was it briefed before us. Because the issue is jurisdictional and could be dispositive, we address it first.
 
 
 10
 The Carmack Amendment applies to common carriers "providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subchapter I, II, or IV of chapter 105 of this title...." 49 U.S.C. § 11707(a)(1). The ICC's jurisdiction does not extend, however, to shipments from a foreign country to the United States unless a domestic segment of the shipment is covered by a separate domestic bill of lading. See 49 U.S.C. §§ 10501, 10521, 10561; Reider v. Thompson, 339 U.S. 113, 117-18, 70 S.Ct. 499, 501-02, 94 L.Ed. 698 (1950); Capitol Converting Equip., Inc. v. LEP Trans., Inc., 965 F.2d 391, 394 (7th Cir.1992); Swift Textiles, Inc. v. Watkins Motor Lines, 799 F.2d 697, 701 (4th Cir.1986), cert. denied, 480 U.S. 935, 107 S.Ct. 1577, 94 L.Ed.2d 768 (1987).
 
 
 11
 Although the fact that this shipment originated from outside the United States is apparently undisputed, the record is too sparse for us to determine whether the shipment is subject to the jurisdiction of the ICC and thus governed by the Carmack Amendment. No evidence appears in the record to show whether any domestic bill of lading was issued to cover the domestic segment of the shipment. Indeed, even the original contract documents have not been made available. Accordingly, we must vacate the judgment in favor of Sea Horse and Western Overseas and remand the case against them to the district court to determine this threshold question.
 
 III
 
 12
 Because we are remanding this case, leaving open the possibility that a domestic bill of lading may have been issued, we believe we must proceed to reach the preemption issue decided by the district court and appealed by Shao.
 
 
 13
 Federal law preempts state and common law when Congress expressly provides that the federal law supplants state authority in a particular field, or when its intent to do so may be inferred from a pervasive system of regulation which does not leave a sufficient vacancy within which any state can act. See Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); Worm v. American Cyanamid Co., 970 F.2d 1301, 1304 (4th Cir.1992). Preemption may also be inferred where state legislation would impede the purposes and objectives of legislation enacted by Congress. See Hillsborough County v. Automated Medical Lab., Inc., 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985).
 
 
 14
 The Carmack Amendment was enacted in 1906 as an amendment to the Interstate Commerce Act of 1887 and addresses the liability of common carriers for goods lost or damaged during a shipment over which the Interstate Commerce Commission has jurisdiction. Originally part of the Hepburn Act, ch. 3591, 34 Stat. 584 (1906), and codified at 49 U.S.C. § 20(11), the Carmack Amendment has since been recodified primarily at 49 U.S.C. § 11707.[2] The Amendment requires, among other things, that a carrier transporting property issue a bill of lading or a receipt to the shipper, and makes the carrier liable to the one entitled to recover under the bill of lading or the receipt for loss of or injury to the property.
 
 
 15
 The United States Supreme Court has long interpreted the Carmack Amendment as manifesting Congress' intent to create a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading. In Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913), the Supreme Court ruled that a state law which invalidated contracts of carriage containing maximum liability clauses was preempted by the Carmack Amendment. In reaching this conclusion, the Court described the preemptive scope of the Carmack Amendment in expansive terms:
 
 
 16
 Almost every detail of the subject [of the liability of a carrier under a bill of lading] is covered so completely [by the Carmack Amendment] that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it....
 
 
 17
 ... The duty to issue a bill of lading and the liability thereby assumed are covered in full, and though there is no reference to the effect upon state regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject.
 
 
 18
 Id. at 505-06, 33 S.Ct. at 152; see also New York, New Haven & Hartford R.R. v. Nothnagle, 346 U.S. 128, 131, 73 S.Ct. 986, 988, 97 L.Ed. 1500 (1953) ("With the enactment in 1906 of the Carmack Amendment, Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss."); Atchison, Topeka & Santa Fe Ry. v. Harold, 241 U.S. 371, 378, 36 S.Ct. 665, 668, 60 L.Ed. 1050 (1916) ("[T]he Carmack Amendment ... was an assertion of the power of Congress over the subject of interstate shipments, the duty to issue bills of lading and the responsibilities thereunder, which in the nature of things excluded state action.... [A]s the subject of a carrier's liability for loss or damage to goods moving in interstate commerce under a bill of lading is embraced by the Carmack Amendment, state legislation on that subject has been excluded.").
 
 
 19
 Every circuit court that has considered the issue has relied upon the Court's reasoning in Adams Express to conclude likewise that the Carmack Amendment preempts a shipper's state and common law claims of breach of contract and negligence for goods lost or damaged by a carrier during interstate shipment under a valid bill of lading. See, e.g., Hughes Aircraft Co. v. North American Van Lines, 970 F.2d 609, 613 (9th Cir.1992) ("It is clear that the Carmack Amendment established a uniform national liability policy for interstate carriers" which "preempts any state common law action against [a carrier] acting solely as a common carrier."); Underwriters at Lloyds of London v. North American Van Lines, 890 F.2d 1112, 1121 (10th Cir.1989) ("[T]he Carmack Amendment preempts state common law remedies against common carriers for negligent loss or damage to goods shipped under a lawful bill of lading."); Intech, Inc. v. Consolidated Freightways, Inc., 836 F.2d 672, 677 (1st Cir.1987) ("[T]he Carmack Amendment provides the exclusive remedy" for "an action for damages against the delivering carrier"); Hughes v. United Van Lines, 829 F.2d 1407, 1415 (7th Cir.1987) ("[T]he remedy provision of the Carmack Amendment preempts all state and common law remedies inconsistent with the Interstate Commerce Act...."), cert. denied, 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988); Hopper Furs, Inc. v. Emery Air Freight Corp., 749 F.2d 1261, 1264 (8th Cir.1984) ("All actions against a common carrier, whether designated as tort or contract actions, are governed by the federal statute...."); Air Products & Chemicals, Inc. v. Illinois Cent. Gulf R.R. Co., 721 F.2d 483, 487 (5th Cir.1983) ("Congress intended by the Carmack Amendment to provide a uniform national remedy against carriers for breach of the contract of carriage, including a liability for default in any common-law duty as a common carrier."), cert. denied, 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984); W.D. Lawson & Co. v. Penn Cent. Co., 456 F.2d 419, 421 (6th Cir.1972) ("As to ... whether or not the Carmack Amendment preempted common law suits of the nature of the first count stated in this case ..., we hold that it did.").
 
 
 20
 Despite this authority, Shao maintains that the Carmack Amendment contains language that supports his contention that "the Carmack Amendment does not preempt the common law by fully occupying the field" of carrier liability for goods damaged or lost during shipment. Section 10103, found within the Amendment, states that "[e]xcept as otherwise provided in this subtitle, the remedies provided under this subtitle are in addition to remedies existing under another law or at common law " (emphasis added). In attempting to apply § 10103 to his own case, however, Shao ignores the section's context and gives it overly broad application.
 
 
 21
 While § 10103 may preserve common law remedies for goods damaged due to a breach of duty by one not responsible for their shipment, Shao's complaint in this case rests on the alleged breach of duty arising from the commitment of goods to the custody of defendants for shipment. It is that very duty which Congress undertook to make uniform and regulate, preempting any state regulation of that duty. To so hold is not to say that the Carmack Amendment preempts duties existing at common law beyond those which arise from or in connection with the bailment of goods for carriage. For example, the Carmack Amendment would not preempt a state or common law claim by Shao against a third party tortfeasor who may have caused the Miami fire. To interpret § 10103, however, to allow the common law claims asserted in Shao's complaint would conflict with the narrow reading given a previous version of § 10103 by the Supreme Court in Adams Express:[3]
 
 
 22
 [I]t has been argued that the non-exclusive character of this regulation is manifested by the proviso of the section, and that state legislation upon the same subject is not superseded, and that the holder of any such bill of lading may resort to any right of action against such a carrier conferred by existing state law. This view is untenable. It would result in the nullification of the regulation of a national subject and operate to maintain the confusion of the diverse regulation which it was the purpose of Congress to put an end to.
 
 
 23
 Adams Express, 226 U.S. at 507, 33 S.Ct. at 152. The Court went on to note that the proviso, which on its face seemed to preserve alternative state remedies for actions arising out of the contractual relationship between shipper and carrier,
 
 
 24
 was "evidently only intended to continue in existence such other rights or remedies for the redress of some specific wrong or injury, whether given by the Interstate Commerce Act, or by state statute, or common law, not inconsistent with the rules and regulations prescribed by the provisions of this act." ... To construe this proviso as preserving to the holder of any such bill of lading any right or remedy which he may have had under existing Federal law at the time of his action, gives to it a more rational interpretation than one which would preserve rights and remedies under existing state laws, for the latter view would cause the proviso to destroy the act itself.
 
 
 25
 Id. at 507-08, 33 S.Ct. at 153 (citation omitted).[4] Despite Shao's contention otherwise, this virtually uniform interpretation provided by the Supreme Court and the circuit courts has "relegated the proviso relating to other remedies [§ 10103] to a category of almost total insignificance." Lloyds of London, 890 F.2d at 1116.
 
 
 26
 The scope of the Carmack Amendment's preemptive effect has not previously been decided in this circuit. In Millers Mutual Insurance Ass'n v. Southern Railway, 483 F.2d 1044, 1049 (4th Cir.1973), we noted that "we are inclined to think the Carmack Amendment preempts state remedies in the area that it covers," but concluded that it was inappropriate to reach the issue at that time. Today we do reach that issue and conclude that the Carmack Amendment was intended by Congress to create a national uniform policy regarding the liability of carriers under a bill of lading for goods lost or damaged in shipment. Allowing a shipper to bring common law breach of contract or negligence claims against a carrier for such loss or damage conflicts with this policy. We therefore agree that if the Interstate Commerce Commission had jurisdiction over the shipment in this case, Shao's common law claims are preempted by the Carmack Amendment.
 
 IV
 
 27
 The district court, having ruled that the Carmack Amendment preempted the plaintiff's common law causes of action and that the complaint adequately alleged the necessary elements of a claim under the Amendment,[5] proceeded to hold that the claim was barred by the statute of limitations found at 49 U.S.C. § 11706(c)(1), which requires that "[a] person must file a complaint with the [Interstate Commerce] Commission to recover damages under section 11705(b)(2) of this title within 2 years after the claim accrues." Shao contends that because a Carmack Amendment claim cannot be considered to constitute a claim under § 11705, it is not governed by the limitations of § 11706(c)(1). He contends that § 11706 applies only to claims made against carriers governed by subchapters I (rail, rail-water, express, and pipeline carriers) and III (water carriers) and that his claim is against motor carriers and freight forwarders, who are governed by subchapters II and IV, respectively. He also contends that § 11706 applies only to claims made to the ICC for acts or omission in violation of the subtitle. The appellees have not disputed Shao's contentions, arguing only that Shao did not meet the time requirements of § 11707(e) which unquestionably does apply.
 
 
 28
 We agree that the district court erred in applying the two-year limitation provision of § 11706 to a claim under § 11707. By its terms, § 11706(c)(1) supplies the limitations period for actions initiated with the ICC under § 11705(b)(2). Section 11705(b)(2) addresses the liability of carriers for "damages sustained by a person as a result of an act or omission of that carrier in violation of this subtitle." The claims under § 11705(b) have been traditionally limited to refunds for overcharges, i.e. charges exceeding the amount specified in an applicable tariff (subsection (b)(1)), or for damages for amounts charged pursuant to an unlawful tariff (subsection (b)(2)). See Aluminum Co. of America v. United States, 867 F.2d 1448, 1452 (D.C.Cir.1989). The alleged injury which Shao seeks to have remedied in this case, however, is the loss of personal belongings which were destroyed during shipment. Actions brought by shippers against carriers for goods lost or damaged in interstate shipment are governed by the Carmack Amendment, § 11707.
 
 
 29
 The only statutorily specified limitations relating to the time for filing a claim under § 11707 are restrictions imposed on the parties' authority to contract for time limitations, as set forth in § 11707(e). That section provides:
 
 
 30
 A carrier or freight forwarder may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier or freight forwarder gives a person written notice that the carrier or freight forwarder has disallowed any part of the claim specified in the notice.
 
 
 31
 The district court correctly noted that § 11707(e) "is not a statute of limitations, but a statutory determination of what is a reasonable period of time for a carrier to impose for filing a claim." See Louisiana & W.R.R. v. Gardiner, 273 U.S. 280, 284, 47 S.Ct. 386, 388, 71 L.Ed. 644 (1927) (holding that an earlier version of § 11707 was not intended to operate as a statute of limitation but rather was meant to "restrict[ ] the freedom of carriers to fix the period within which suit could be brought...."); Yamazen U.S.A., Inc. v. Chicago and Northwestern Transp. Co., 790 F.2d 621, 623 (7th Cir.1986) ("Courts have similarly held that [49 U.S.C. § ] 11707 does not operate as a rigid statute of limitations but rather sets forth a reasonable time limit for filing."). The Carmack Amendment thus contemplates that limitation periods are terms to be bargained over between shipper and carrier, so long as the minimum conditions of § 11707(e) are met. See Swift Textiles, Inc., 799 F.2d at 704 n. 4 ("The Carmack Amendment on its face contemplates that the choice of a statute of limitation is to lie with the shipper subject to the minimum time limit prescribed by the Act.... [T]he Act clearly anticipates statutes of limitations and legislatively approves any limitation period exceeding two years.").
 
 
 32
 Determining whether the appellant's claim under the Carmack Amendment, 49 U.S.C. § 11707, is contractually time-barred therefore requires examination of any bill of lading that may have been issued to Shao, as well as the documentation concerning the filing of his claim for damaged goods and the disallowal of that claim by the carrier. None of this information is contained in the record presently before us, and it would have to be developed to resolve the claim's timeliness if the Carmack Amendment applies.
 
 V
 
 33
 Finally, Shao contends that the dismissal, under Federal Rule of Civil Procedure 4(j), of five named defendants who were not served[6] was improper. Rule 4(j) requires that an action be dismissed as to any defendant upon whom service of the summons and complaint is not made within 120 days after the filing of the complaint, if the party on whose behalf the service was required cannot show good cause why service was not made within that period. The district court's dismissal for untimely service under this rule is reviewed under an abuse of discretion standard. See Cox v. Sandia Corp., 941 F.2d 1124, 1125 (10th Cir.1991). In this case we find no such abuse.
 
 
 34
 Shao filed his complaint on June 3, 1991, but by October 1991 had still not served these five defendants. At Shao's request, the district court granted a 40-day extension to effect service. When service still had not occurred in November 1991, Shao was given yet another extension of 20 days, which expired December 24, 1991. Despite the fact that the district court twice granted extensions, no progress was shown, and Shao provided no reason why additional time would advance his effort. He only argues that he should be given more time "to search."
 
 
 35
 Pointing out that two of the named defendants were corporations incorporated in Taiwan, Shao also contends that Rule 4(j)'s 120-day time limit for serving process does not apply to service on them in a foreign country. Rule 4(j) explicitly states, however, that the 120-day time limit does apply, except when service is sought in a foreign country "pursuant to subdivision (i) of this rule" (emphasis added). See also Practice Commentaries to Fed.R.Civ.Proc. 4 at C4-35 (120-day period may apply to service in a foreign country based on a subdivision other than (i)); Commentary to Rule 4 at C4-34 (plaintiff to whom suspension of 120-day period is important should be careful to proceed under subdivision (i)). In this case, Shao did not proceed under subdivision (i), providing alternative provisions for service in a foreign country, but sought service of process under the options provided in Rule 4(c)(2)(C)(ii). See plaintiff's Motion for Extension of Time, J.A. at 11; plaintiff's Response to Order to Show Cause and Motion for Extension of Time, J.A. at 15-18.
 
 
 36
 Accordingly, we find no error in the district court's dismissal of the unserved defendants and affirm that portion of the judgment.
 
 VI
 
 37
 In summary, we affirm the district court's ruling that the Carmack Amendment preempts Shao's common law claims for breach of contract and negligence for goods lost or damaged by a carrier during interstate shipment, so long as it is determined that a domestic bill of lading exists, and we affirm the court's dismissal of the unserved defendants. However, because the shipment in this case originated from outside the United States and the record fails to show whether or not a domestic bill of lading exists for the domestic portion, we vacate the judgment entered in favor of Sea Horse and Western Overseas and remand for further proceedings. Finally, we reverse the district court's ruling applying the limitation period in 49 U.S.C. § 11706 to the Carmack Amendment claim. If the court reaches the timeliness issue it should apply the provisions of 49 U.S.C. § 11707(e).
 
 
 38
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 Service was effected on Groat Brothers, Inc., which was alleged to have arranged for the transportation of Shao's goods from Long Beach to Baltimore. Groat Brothers contended that their name and customs bond number had been fraudulently misappropriated by another carrier and that they were not involved in Shao's shipment. After the court dismissed the claims against Groat Brothers on its limitations defense, Shao appealed. However, when Shao became convinced that Groat Brothers was not involved in arranging the shipment, he requested that it be dismissed from the appeal. The dismissal was granted by order dated July 24, 1992
 
 
 [2]
 49 U.S.C. § 11707 provides in relevant part:
 (a)(1) A common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission ... shall issue a receipt or bill of lading for property it receives for transportation.... That carrier ... and any other common carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Commission ... are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (1) the receiving carrier, (2) the delivering carrier, or (3) another carrier over whose line or route the property is transported in the United States....
 
 
 [3]
 The proviso of the Carmack Amendment interpreted by the Supreme Court in Adams Express read, "nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." 34 Stat. at 593
 
 
 [4]
 Although Congress reacted to a portion of the Adams Express decision in the First Cummins Amendment (incorporated into the Carmack Amendment in 1915, ch. 176, 38 Stat. 1196), it was silent regarding that decision's narrow reading of the Carmack Amendment's proviso concerning alternative causes of action. See H.R.Rep. No. 1341, 63d Cong., 3d Sess. (1915); Underwriters at Lloyds of London v. North American Van Lines, 890 F.2d 1112, 1120 (10th Cir.1989) (in enacting the Cummins Amendment, "nothing was said [by Congress] about the Court's narrowing of the reach of the proviso with respect to common law remedies. Indeed, much of the debate on the floor of the House and Senate simply took for granted that the Carmack Amendment was the exclusive regulation of the subject of carrier liability for its own negligence resulting in the loss or damage to the shipper's goods."); Hughes v. United Van Lines, 829 F.2d 1407, 1414 (7th Cir.1987) ("[T]he First Cummins Amendment addressed issues wholly separate from that of preserving for shippers their state and common law remedies; rather, it addressed the scope of the statute as it applied to the carriage of goods in foreign countries, the scope of the carrier's liability, and notice requirements for 'concealed' goods"), cert. denied, 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988)
 
 
 [5]
 As we noted in Section II, supra, to prove a claim under the Carmack Amendment the plaintiff would also have to show that the shipment came within the jurisdiction of the ICC
 
 
 [6]
 They are Link Cargo (Taiwan), Ltd. (an international transportation broker in Taipei); Abacus Transports and Forwarder, Ltd. (an international transportation broker in Taipei); Inhouse Trucking Co. (a California trucker); International Warehouse Distribution Corp. (a Florida warehouseman); and MICC Venture (a Florida lessor of warehouse space)