Octavio BERLANGA and Marisa
Berlanga, Plaintiffs,

v.

TERRIER TRANSPORTATION, INC.,
Transportes Tres Banderas a/k/a
Three Flags Transportation Services,
Ram Transportation, S.A. de C.V., and
Pedro Fernandez, Defendants.

No. 3:00–CV–2334–P.

United States District Court,
N.D. Texas,
Dallas Division.

April 7, 2003.

Stephen L. Enda, Weiner, Glass & Reed, Dallas, TX, for Plaintiffs.

M. David Frock, Frock & Broussard, Houston, TX, for Terrier Transportation, Inc. and Pedro Fernandez.

Jack Lawson Coke, Jr., Law Office of Jack L. Coke, Jr., Dallas, TX, for Transportes Tres Banderas, Ram Transportation, and S.A. de C.V.

## MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

Plaintiff Octavio Berlanga contracted with Defendants Transportes Tres Banderas a/k/a Three Flags Transportation ("Three Flags") and Ram Transportation, S.A. de C.V. ("Ram") to transport his family's household belongings from Mexico City, Mexico, to Plano, Texas. These defendants transported the goods to Nuevo Laredo, Mexico. After the goods passed through customs, Defendant Pedro Fernandez ("Fernandez"), a contractor for Defendant Terrier Transportation, Inc. ("Terrier"), transported the Berlangas' property from Laredo to Plano. When the truck arrived in Plano, Plaintiff opened the trailer to find items strewn about, broken, crushed or otherwise damaged. Plaintiffs brought suit in federal court under Title 49 of the United States Code and, pleading diversity jurisdiction, asserted claims based on Texas common law and the Texas Deceptive Trade Practices Act.

Defendants Terrier and Fernandez now move for summary judgment on grounds that Plaintiffs' state-law claims are preempted by the Carmack Amendment; alternatively, they aver that there is no evidence to support essential elements of Plaintiffs' claims against them. Plaintiff has also moved for summary judgment based on the Carmack Amendment. After reviewing the pleadings, the motions, the briefing, the summary-judgment evidence, the objections to evidence, and the applica-

ble statutory and case law, the Court GRANTS Defendants Terrier and Fernandez's Motion for Summary Judgment and DENIES Plaintiffs' Motion for Summary Judgment. The case shall proceed to trial.

## I. Factual Background

In October 1998, Plaintiff Octavio Berlanga contacted an office of Three Flags/ Ram in Mexico City for a quote on the cost of transporting his household goods from Mexico City to Plano, Texas. The bid contemplated a two-phase shipment. The first leg, from Mexico City to Nuevo Laredo, would be handled by Three Flags/Ram, and would cost Plaintiffs about U.S.$1,200.00. Once the goods cleared U.S. Customs, the second leg would be handled by Terrier at a cost of U.S. $495.00. A representative of Three Flags/Ram purportedly told Plaintiffs that Defendants would pack and load the trailer and that Terrier would provide the trailer and assistance with the shipment. In a letter dated October 8, 1998, Defendants stated that they had the knowledge and experience necessary to perform moving services.

Plaintiffs allege that their "household goods were loaded by Defendants" onto a truck provided by Terrier. Specifically, both plaintiffs avow in sworn affidavits that, on October 15, 1998, the driver, one Honorio Cruz, brought to the Berlangas' home workers who packed and loaded their household belongings onto the truck supplied by Terrier. They further avow that Mr. Cruz at one point brought additional workers to the house to help complete the job. By affidavit, Plaintiffs assert that their belongings were in good condition when they were delivered to Defendants.

Defendants deny that any employee or agent of any defendant packed or loaded Plaintiffs' belongings onto the truck. Rather, they contend that Three Flags/ Ram, per Plaintiffs' instructions, "dropped the empty van at the Plaintiffs['] Mexico City residence for the Plaintiffs to load" and that Plaintiffs did indeed pack and load the van themselves. Defendants further contend that the truck was padlocked when it was delivered to the driver, who had no opportunity to inspect the belongings, the condition of the items, or the manner in which the belongings were secured.

Defendants issued a Mexican through bill of lading, which purported to cover shipping over the entire route.[1] When the trailer arrived at the border, Plaintiffs asked that the trailer be opened so that some suitcases (which had been in the family's minivan) could be transported in the trailer. Defendants contend that Plaintiffs loaded a substantial number of wet cartons and other unknown items (apparently not suitcases) into the trailer at the border. Mr. Berlanga avows that he visually inspected the interior of the trailer at that time and did not notice anything amiss. Defendants Terrier and Fernandez contend that the trailer was not opened or in any way inspected or inventoried by any agent, employee, or representative of Terrier while in the custody of Mr. Fernandez.

The trailer cleared U.S. customs on October 23, 1998. The customs agent did not indicate that Plaintiffs' belongings were damaged or otherwise not in good condition. Mr. Fernandez hitched his tractor to the trailer at the border and drove it from Laredo to Plano.[2] There is no evidence

---

**1.** Under a through bill of lading, "a carrier transports goods to a designated destination, even though the carrier will have to use a connecting carrier for part of the passage."

BLACK'S LAW DICTIONARY 160 (Bryan A. Garner, ed., 7th ed.1999).

**2.** Pursuant to FED. R. EVID. 201(c), the Court takes judicial notice of the fact that Plano is

that a domestic bill of lading was issued for the domestic leg of this shipment. It is not clear when Mr. Fernandez departed Laredo.

When Mr. Fernandez and the trailer arrived in Plano on October 26, Mr. Berlanga broke a seal marked "Transmaritime, Inc." and opened the trailer. "I immediately noticed that my property was strewn and scattered about the trailer and that many items were broken, crushed or damaged." He notified his wife, who came outside to look at the trailer and the damaged property.

Mr. Fernandez purportedly stated that he would call his boss about the matter, that he was very tired, that he had driven to Laredo following another long haul, that he had driven all the way from Laredo to Plano without sleep, and that he had caused an accident in San Antonio. Both plaintiffs avow that Defendant Fernandez appeared "physically exhausted." Defendants Terrier and Fernandez deny there was any accident or unusual event during the drive from Laredo to Plano.

An agent of Defendant Terrier inspected the property at their Plano residence. Plaintiffs gave Defendant Terrier written notice of their claim by letter dated July 6, 1999, but it was not accepted. Plaintiffs contend that the damage to their property amounts to U.S.$127,660.00. Defendants estimate the damage to Plaintiffs' property to be valued at about U.S. $5,720.00.

## II. Procedural Background

Plaintiffs filed a Complaint in federal court on October 23, 2000. Plaintiffs claimed that jurisdiction and venue in this Court were proper "pursuant to the provisions of the Transportation Code, Title 49, United States Code Annotated as well as diversity of jurisdiction and the amount in controversy." Compl. ¶ 1. The Complaint

claims a right to recover under the following legal theories: negligence, breach of implied warranty, and deceptive trade practices (via the Texas Deceptive Trade Practices Act or DTPA, TEX. BUS. & COM. CODE § 17.41 *et seq.*). Plaintiffs also invoke the doctrines of res ipsa loquitur, joint and several liability, and agency. They seek to recover damages of at least $127,660.00, additional damages as allowed under the DTPA, punitive damages as allowed by law, reasonable and necessary attorneys' fees, court costs, pre- and post-judgment interest, and such other and further relief to which Plaintiffs might justly be entitled.

The matter was scheduled for trial in July 2002, but the Court granted a continuance on June 4, 2002, at the request of the parties. A new scheduling order, entered July 9, 2002, established an August 23, 2002, deadline for amending the pleadings. Discovery was to end December 13, 2002. Dispositive motions were to be filed by January 13, 2003.

Defendants Terrier and Fernandez filed a Motion for Summary Judgment on September 10, 2002. By leave of the Court, Plaintiffs responded on February 26, 2003. Defendants replied on March 4, 2003. In this motion, Defendants Terrier and Fernandez ask this Court to grant summary judgment in their favor as to all of Plaintiffs' state-law claims on grounds that they are preempted by the Carmack Amendment, 49 U.S.C. §§ 14706 & 13501. Alternatively, they contend that there is no evidence as to when Plaintiffs' household belongings were damaged, that Defendants Terrier or Fernandez were negligent, that the trailer was defective, that Mr. Fernandez did or failed to do anything that caused damage to Plaintiffs' property, or that Defendants Terrier or Fernandez made any warranties or representations.

about 450 miles from Laredo.

Plaintiffs filed a Motion for Summary Judgment on January 13, 2003. By leave of the Court, Defendants Three Flags and Ram responded on February 26, 2003, while Defendants Terrier and Fernandez responded on March 3, 2003. Plaintiffs filed their replies on March 5, 2003. By this motion, Plaintiffs contend that the evidence demonstrates a *prima facie* case under the Carmack Amendment and that Defendants have produced no evidence that would except them or otherwise provide a defense to liability. Plaintiffs also move for summary judgment on their state law claims.

### III. Standard for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of informing the district court of the basis for their belief that there is an absence of a genuine issue for trial, and pointing out those portions of the record that demonstrate such an absence. *Id.* All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

When the moving party bears the burden of proof on a matter, "[they] must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [their] favor." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986) (emphasis original). The nonmoving party may but need not present evidence casting doubt on the sufficiency of the moving party's proof. Summary judgment must be denied if a genuine issue of material fact remains in spite of the evidence traduced by the moving party.

When the party moving for summary judgment does not bear the burden of proof, they need only point to a lack of evidence concerning an essential element of the nonmoving party's case. Once the moving party has made this initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden-bearing party defending against a motion for summary judgment can defeat the motion by presenting specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Id.* at 248–50, 106 S.Ct. 2505; *Abbott v. Equity Group, Inc.,* 2 F.3d 613, 619 (5th Cir.1993). In other words, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (en banc). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to is case—on which they bear the burden of proof at trial—summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

### IV. Objections to Summary–Judgment Evidence

The Court has considered the various objections to summary-judgment evidence

that the parties have made. Where appropriate, the Court has considered these objections when evaluating the evidence. The rest of the objections are DENIED AS MOOT.

## V. The Carmack Amendment Applies to this Shipment of Property

This Court's resolution of the parties' motions depends in large part on the applicability of the Carmack Amendment to the international shipment of Plaintiffs' household belongings by motor carrier. In their Motion for Summary Judgment, Defendants Terrier and Fernandez maintain that the Carmack Amendment preempts Plaintiffs' state-law causes of action and that summary judgment should be entered accordingly. Defs.' Mot. ¶ 5. Plaintiffs do not seriously contest the preemption issue, although they do attempt to preserve the claims brought under the DTPA. Pls.' Resp. at 11–12.

By their own summary-judgment motion, Plaintiffs contend that the summary-judgment evidence demonstrates as a matter of law their right to recover . from Defendants under the Carmack Amendment. Pls.' Mot. ¶ 5. In apparent contradiction of the position taken to dispose of Plaintiffs' state-law claims, Defendants Terrier and Fernandez counter Plaintiffs' Motion by asserting that the ·Carmack Amendment does *not* apply to this shipment of property because no separate bill of lading was issued in the United States. *See* Terrier's Resp. Br. ¶ 18–19 (citing, *inter alia, Reider v. Thompson*, 339 U.S. 113, 70 S.Ct. 499, 94 L.Ed. 698 (1950); *Ting–Hwa Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700 (4th Cir.1993); *Capitol Converting Equip., Inc. v. LEP Transp., Inc.*, 965 F.2d 391 (7th Cir.1992); *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697 (11th Cir.1986); *Kenny's Auto Parts, Inc. v. Baker*, 478 F.Supp. 461 (E.D.Pa.1979)). Three Flags and Ram also assert the lack of a domestic

bill of lading as grounds for denying Plaintiffs' Motion for Summary Judgment. Three Flags' Resp. Br. ¶ 10. Relying in part on "49 U.S.C. § 10521(a)(1)(E)," Plaintiffs contend that a domestic bill of lading is not necessary, so long as the intent of the parties was that the domestic leg was a continuation of foreign commerce. Pls.' Reply at 4–5 (citing *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697 (11th Cir.1986); *Canon USA, Inc. v. Nippon Liner Sys., Ltd.*, No. 90 C 7350, 1992 WL 82509 (N.D.Ill. Apr.17, 1992); *Russell Stover Candies, Inc. v. Double VV, Inc.*, 983 F.Supp. 1359 (D.Kan. 1997)). Despite the numerous cases applying the principle advocated by Defendants and the fact that Plaintiffs cite an obsolete section of the Transportation Code, the Court finds that the Carmack Amendment controls the outcome of this case, regardless whether a domestic bill of lading ever issued.

### A. Not "From/To" But "Between/And"

■ The Carmack Amendment applies to motor carriers subject to the jurisdiction of the Secretary of Transportation ("the Secretary") and the Surface Transportation Board ("STB"). *See* 49 U.S.C. § 14706(a)(1). Under 49 U.S.C. § 13501(1)(E), formerly § 10521(a)(1)(E), such jurisdiction lies where property is transported by motor carrier "between a place in ... the United States [such as Plano, Texas] and a place in a foreign country [such as Mexico City, Mexico] to the extent the transportation is in the United States ..." The Carmack Amendment does not apply to shipments that are wholly intrastate. *See* 49 U.S.C. § 13504.

It is important to note that applicability of the Carmack Amendment no longer depends on the point of origin, so long as the shipment is "between" a point in the Unit-

ed States and a point in the United States or elsewhere. Before 1978, the liabilities rules established by Carmack applied to "[a]ny common carrier ... subject to the provisions of this chapter receiving property for transportation *from* a point in one State or Territory or the District of Columbia *to* a point in another State, Territory, District of Columbia, or *from* any point in the United States *to* a point in an adjacent country ..." *See* 49 U.S.C. § 20(11) (1976) (quoted in *Kenny's Auto Parts, Inc. v. Baker,* 478 F.Supp. 461, 463 (E.D.Pa. 1979)) (emphasis added). *See also Reider v. Thompson,* 339 U.S. 113, 114, 70 S.Ct. 499, 94 L.Ed. 698 (1950) (quoting 34 Stat. 593, 595, as amended, 49 U.S.C. § 20(11)). The applicability of the Carmack Amendment depended on "the direction of the movement of the specific shipment in question." *Strachman v. Palmer,* 177 F.2d 427 (1st Cir.1949). Thus, in *Kenny's Auto Parts,* a shipment under a through bill from Windsor, Ontario, to Philadelphia, Pennsylvania, by way of Detroit, Michigan, was not subject to the Carmack Amendment because the goods were "received for shipment at a point outside the United States." 478 F.Supp. at 464.

Today, the Amendment's applicability turns on whether the Secretary or the STB exercises jurisdiction over the shipment, not on the direction of the shipment. This, as noted above, depends on whether transportation is between two points, one of which is in the United States. *See Neptune Orient Lines, Ltd. v. Burlington N. & Santa Fe Ry. Co.,* 213 F.3d 1118, 1119 (9th Cir.2000). This change in the Amendment's scope is also apparent in the phrase "to the extent the transportation is in the United States." 49 U.S.C. § 13501. This language did not appear in earlier versions of the statute. While the domestic legs of shipments between a place in the United States and a place in a foreign country are covered regardless the point of origin, it is now plain that the interna-

tional leg of such a shipment is not covered by Carmack.

To the extent that *Kenny's Auto Parts* and the line of cases it follows depend on the direction of an international shipment of property, from rather than to the United States, it is no longer good law. Because the shipment at issue in this case is between a point in the United States (Plano, Texas) and a point in a foreign country (Mexico City, Mexico), it comes within the ambit of the Carmack Amendment.

## B. Bill of Lading Required but Not Necessary

### 1. The Statute is Clear

■ Since its enactment, the Carmack Amendment has required carriers to "issue a receipt or bill of lading for property it receives for transportation ..." 49 U.S.C. § 14706. *See also* Carmack Amendment, 59 Pub.L. No. 337, 34 Stat. 593, 595 (1906) ("[A]ny common carrier ... receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor ..."). Since at least the 1978 revisions, however, the statute has explicitly stated that a covered carrier's "[f]ailure to issue a receipt or bill of lading does not affect the liability of a carrier." *See* Act of Oct. 17, 1978, 95 Pub.L. No. 473, 92 Stat. 1361, 1453, § 11707(a)(1), as amended and codified at 49 U.S.C. § 14706(a)(2). Even assuming, *arguendo,* that the Carmack Amendment requires carriers to issue a separate bill of lading to cover the U.S. leg of an international shipment, the fact that no separate bill of lading is issued in a given case is immaterial to the question of the Carmack Amendment's applicability. *See Kyodo U.S.A., Inc. v. Cosco N. Am., Inc.,* No. CV–01–499, 2001 WL 1835158, *5, 2001 U.S. Dist. LEXIS 24360, *20–21 (C.D.Cal. July 23, 2001) ("[T]he domestic leg of an

overseas shipment ... is subject to the Carmack Amendment even if no separate bill of lading issues for that domestic leg.").

### 2. The Case Law is Not

The line of cases cited by Defendants holds precisely the opposite. For example, in *Capitol Converting Equip., Inc. v. LEP Transp., Inc.*, 965 F.2d 391, 394 (7th Cir.1992), it was said that the jurisdiction of the Interstate Commerce Commission (whose jurisdiction at that time governed the applicability of the Carmack Amendment, just as the Surface Transportation Board's jurisdiction does now) "does not extend to shipments by water, rail or motor carriers from a foreign country to the United States ... unless a domestic segment of the shipment is covered by a separate domestic bill of lading." Under the rule applied in *Capitol Converting Equipment*, a through bill issued in a foreign country will not, by itself, bring a shipment to a place in the United States within the purview of the Carmack Amendment. *Id. See also Ting–Hwa Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 703 (4th Cir.1993); *Seguros Comercial Americas S.A. de C.V. v. Am. President Lines, Ltd.*, 910 F.Supp. 1235, 1239 (S.D.Tex.1995); *Fine Foliage of Fla., Inc. v. Bowman Transp., Inc.*, 698 F.Supp. 1566, 1571 (M.D.Fla.1988), *aff'd on other grounds*, 901 F.2d 1034 (11th Cir.1990).

This requirement can be traced to the "holding" of *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697, 701 (11th Cir.1986): "We therefore hold that when a shipment of foreign goods is sent to the United States with the intention that it come to final rest at a specific destination beyond its port of discharge, then the domestic leg of the journey (from the port of discharge to the intended destination) will be subject to the Carmack Amendment as long as the domestic leg is covered by separate bill or bills of lading." This

"holding," however, creates an internal inconsistency in the Eleventh Circuit's opinion. *See Canon USA, Inc. v. Nippon Liner Sys., Ltd.*, No. 90 C 7350, 1992 WL 82509, *4, 1992 U.S. Dist. LEXIS 5699, *19–22 (N.D.Ill. Apr. 17, 1992). To appreciate the nature of this inconsistency, it is necessary to consider the *Swift Textiles* opinion in some detail.

### 3. Holding Swift Textiles *Responsible*

In *Swift Textiles*, a shipper ordered goods from a Swiss corporation with the intent that they ultimately be delivered to LaGrange, Georgia. *See* 799 F.2d at 698. The goods were transported by rail to Hamburg, Germany, then shipped to Charleston, South Carolina, under a bill of lading issued by the ocean carrier. They were then trucked to Savannah, Georgia, the destination identified by the ocean bill of lading. The final leg of the shipment to LaGrange was completed under a short-form bill of lading issued by a Savannah customs broker. Some of the goods were damaged while en route from Savannah to LaGrange. Watkins denied the claim filed by Swift Textiles, which subsequently sued in federal court. The district court dismissed the case on grounds that the statute of limitations imposed by the Carmack Amendment had run.

The key issue on appeal was whether the shipment in question was merely intrastate or a shipment "between a place in ... the United States and a place in a foreign country ..." *Id.* at 699. Pointing to the fact that the Savannah–to–LaGrange leg of the shipment was made under a bill of lading separate from the bill issued by the ocean carrier, the shipper (Swift) contended that the shipment from Savannah to LaGrange was merely intrastate and thus not governed by the Carmack Amendment. *Id.* The Eleventh Cir-

cuit rejected this argument, applying the well-established "intent" test for determining whether the shipment is intrastate. *See id.* at 699–700 (citing, *inter alia, Atl. Coast Line R.R. Co. v. Standard Oil Co.,* 275 U.S. 257, 268–69, 48 S.Ct. 107, 72 L.Ed. 270 (1927) (courts should look to the intent "fixed in the minds" of the shipper to determine whether shipment was interstate or intrastate) & *Texas v. Anderson, Clayton & Co.,* 92 F.2d 104, 107 (5th Cir. 1937) ("It is well-settled that, in determining whether a particular movement of freight is interstate or intrastate or foreign commerce, the intention existing at the time the movement starts governs and fixes the character of the shipment.")). *See also Project Hope v. M/V IBN SINA,* 250 F.3d 67, 74 (2d Cir.2001) (applying intent test to determine whether a shipment was merely intrastate or within the ambit of the Carmack Amendment); *Vesta Forsikring AS v. Mediterranean Shipping Co.,* No. H–00–1938, 2001 WL 1660255, at *3, 2001 U.S. Dist. LEXIS 17866, at *7–9 (S.D.Tex. Aug.9, 2001) (same).

Because "it [could not] be disputed that the shipment was intended to begin in Switzerland and end in LaGrange, Georgia," § 10521(a)(1)(E) was satisfied, and the Carmack Amendment applied. In so ruling, the Eleventh Circuit panel emphasized that "the fact that Watkins issued a separate bill of lading for the final intrastate leg of the journey is *not significant.*" *Id.* at 700 (emphasis added). To underscore this point, the court quoted the Supreme Court's opinion in *United States v. Erie R.R. Co.,* 280 U.S. 98, 102, 50 S.Ct. 51, 74 L.Ed. 187 (1929), a case involving the import of goods to Hoboken, New Jersey, and their subsequent transport by rail to Garfield, New Jersey. The *Erie* Court held that the shipment's character as foreign or intrastate commerce during the Hoboken–to–Garfield leg "is not affected by the fact that the transaction is . . . completed under a local bill of lading which

is wholly intrastate." As the Eleventh Circuit put it, "the critical inquiry" in determining whether the domestic leg of a shipment was subject to the Carmack Amendment or excepted from coverage as intrastate commerce "is whether the domestic leg of the shipment was intended to be part of a larger shipment originating in a foreign country. If it is part of such a larger shipment, then it is a shipment 'between a place . . . in the United States and a place in a foreign country . . .'" 799 F.2d at 701 (quoting 49 U.S.C. § 10521(a)(1)(E), now codified at § 13501(1)(E)).

For the *Swift Textiles* court to later "hold" that a shipment of foreign goods to the United States is covered by the Carmack Amendment "as long as the domestic leg is covered by separate bill or bills of lading" is inconsistent with the argument of the opinion as a whole and the case law on which it depends. It is also contrary to the language of the statute, which does not condition applicability of the Carmack Amendment on the issuance of bill of lading and which expressly states that the "[f]ailure to issue a receipt or bill of lading does not affect the liability of the carrier." *See* 49 U.S.C. § 14706.

*4. Carmack Applies to the Case at Hand*

■ The Fifth Circuit has yet to address this issue, but this Court is content to consider unpersuasive those cases which rely on the "holding" of *Swift Textiles* to find a shipment of property between a place in a foreign country and a place in the United States to be outside the purview of the Carmack Amendment simply because no separate bill of lading was issued to govern the United States leg of the shipment. *E.g., Capitol Converting Equip., Inc. v. LEP Transp., Inc.,* 965 F.2d 391 (7th Cir.1992); *Ting–Hwa Shao v. Link Cargo (Taiwan) Ltd.,* 986 F.2d 700 (4th Cir.1993); *Seguros Comercial Amer-*

*icas S.A. de C.V. v. Am. President Lines, Ltd.*, 910 F.Supp. 1235 (S.D.Tex.1995); *Fine Foliage of Fla., Inc. v. Bowman Transp., Inc.*, 698 F.Supp. 1566 (M.D.Fla. 1988). Those cases are based on uncertain precedent and run counter to the plain text of the statute.

In sum, the shipment in the case at hand involved the transport by motor carrier of property between a place in the United States and a place in a foreign country. It is most certainly within the ambit of the Carmack Amendment. No one contends that the intrastate exception applies since the last leg covered only Texas territory. Even if such an argument were raised, however, the summary-judgment record proves beyond peradventure that Plaintiffs' intent when the shipment commenced places the transportation of their property within the purview of the Carmack Amendment.

## VI. Plaintiffs' State–Law Claims Are Preempted

■ Plaintiffs have asserted causes of action based on negligence, implied breach of warranty, and the Texas Deceptive Trade Practices Act. Defendants Terrier and Fernandez ask this Court to grant summary judgment in their favor on grounds that these claims are preempted by the Carmack Amendment. *See* 49 U.S.C. § 14706. It is well settled that "[t]he Carmack Amendment generally preempts state law claims arising out of the shipment of goods by interstate carriers." *Accura Sys., Inc. v. Watkins Motors Lines, Inc.*, 98 F.3d 874, 876 (5th Cir.1996) (citing *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305 (5th Cir.1993)). *Moffit* held that the Carmack Amendment preempted, among other things, the plaintiffs' negligence, breach of implied warranty, and DTPA claims. *See* 6 F.3d at 306.

In their Response to Terrier and Fernandez's Motion for Summary Judgment,

Plaintiffs attempt to salvage their DTPA claim, relying on *American Transfer & Storage Co. v. Brown*, 584 S.W.2d 284, 288–290 (Tex.Civ.App.—Dallas 1979), *aff'd in relevant part*, 601 S.W.2d 931, 938 (Tex. 1980) (finding that "a DTPA suit for misrepresentations made prior to contract does not fall within the ambit of [the Carmack Amendment]"). Plaintiffs' reliance on *Brown* is understandable, and the analysis in *Brown* is logical and possibly persuasive, but "this Court must follow federal case law in reaching its decision and the Fifth Circuit's holding in *Moffit* is controlling in this case." *Mayflower Transit, Inc. v. Weil, Gotshal & Manges, L.L.P.*, 3:00–CV–0549–P, 2000 U.S. Dist. LEXIS 20299, at *10 (N.D.Tex. Oct. 18, 2000) (Solis, J.). *See also Park v. Nova Container Freight Station*, 3:97–CV–1977–D, 1998 WL 684227, at *1, 1998 U.S. Dist. LEXIS 16302, at *5 (N.D.Tex. Oct. 8, 1998) (Fitzwater, J.); *Broughton v. Global Van Lines, Inc.*, 3:97–CV–2858–G, 1998 WL 401623, at *1, 1998 U.S. Dist. LEXIS 10750, at *6 (N.D.Tex. July 10, 1998) (Fish, J.).

To the extent the transportation was in the United States, Plaintiffs' claims are governed by the Carmack Amendment; therefore, summary judgment is GRANTED in favor of Defendants Terrier and Fernandez as to the state-law claims asserted by Plaintiffs. To the extent the transportation was *not* in the United States, the Court notes that the issue of what law applies has not been joined by the parties. The Court declines to express an opinion on this issue at the present time.

## VII. Plaintiffs Have Asserted a Claim Under the Carmack Amendment

### A. Pleading a Claim Without Actually Saying So

Defendants contend that Plaintiffs' Motion for Summary Judgment should be de-

nied because it is based solely on an unpled cause of action under the Carmack Amendment. *See* Terrier Resp. ¶ 3 & Three Flags Resp. ¶ 1B. Defendants further contend that the deadline for amending the pleadings has long since passed and it is too late to assert such a claim at the summary-judgment stage. In reply, Plaintiffs aver that they "fully complied" with Rule 8 of the Federal Rules of Civil Procedure, "referenc[ing] the Transportation Code and set[ting] forth facts" that formed the basis of this lawsuit. Pls. Reply at 3–4. Plaintiffs contend that "[f]ederal pleading requirements are extremely liberal and Plaintiffs are not required to prove or set forth evidentiary facts." *Id.* at 4.

■ Pleadings are to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). "All pleadings shall be construed as to do substantial justice." Fed.R.Civ.P. 8(f). The Federal Rules of Civil Procedure "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Pleadings are considered inadequate if they fail to "provide notice of the circumstances [giving] rise to the claim" or fail to "set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." *Gen. Star Indem. Co. v. Vesta Fire Ins. Corp.,* 173 F.3d 946, 950 (5th Cir. 1999); *Walker v. S. Cent. Bell Tel. Co.,* 904 F.2d 275, 277 (5th Cir.1990).

In *Self Directed Placement Corp. v. Control Data Corp.,* 908 F.2d 462 (9th Cir.1990), the Ninth Circuit found that the plaintiff had raised a particular claim even though no such cause of action was expressly identified in the complaint. In determining whether a claim of unfair competition had been asserted, the court first asked whether the issue of unfair competition had been sufficiently raised in the pleadings to put the defendant on notice of a claim of unfair competition. *Id.* at 467. It found that the plaintiff had "refer[red] to unfair competition in its jurisdictional statement, in both copyright infringement claims and in its prayer for relief." *Id.* at 466. The court also found that the plaintiff's complaint "set[ ] forth specific allegations which give rise to at least one, if not several different claims, all falling under the umbrella of unfair competition." *Id.*

Finding the defendant to have been on notice of an unfair competition claim, the court then considered whether the plaintiff had preserved the issue at the summary-judgment stage. The plaintiff's "opposition brief, together with its supporting deposition and declaration, ... state[d] at least one, if not two, unfair competition claims ..." *Id.* at 467. The plaintiff offered evidence at the summary-judgment stage that would support a claim for breach of confidential relationship or misappropriation. Because the issue had been properly raised at the summary-judgment stage, the court remanded the case to the district court to consider the plaintiff's unfair-competition claims.

■ In deciding whether Plaintiffs' omission of an express cause of action under the Carmack Amendment is sufficient to deny summary judgment in their favor, the Court asks (1) whether the complaint should have put the defendants on notice of a claim under the Carmack Amendment and (2) whether the issue has been sufficiently raised in the summary-judgment record. A *prima facie* case of Carmack liability is made by allegations or proof of (a) delivery in good condition, (b) arrival in damaged condition, and (c) the amount of damages. *Accura Sys. v. Wat-*

*kins Motor Lines,* 98 F.3d 874, 877 (5th Cir.1996) (quoting *Mo. Pac. R.R. Co. v. Elmore & Stahl,* 377 U.S. 134, 138, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964)).

### B. Plaintiffs Have Sufficiently Raised a Carmack Claim

Plaintiffs' Original Complaint includes no explicit cause of action relying on the Carmack Amendment. Plaintiffs do invoke the jurisdiction of the federal courts "pursuant to the provisions of the Transportation Code, Title 49, United States Code Annotated" even though the causes of action identified in the complaint are all based on state law. Compl. ¶ 1. The Complaint alleges that, at the time the property cleared U.S. customs, "[n]o representations were made to Plaintiffs about any damage to their property." Compl. ¶ 10. This allegation permits the inference that the property was delivered in good condition. The Complaint also alleges that, "[u]pon arrival, Defendants' boxcar was opened and Plaintiffs discovered that their property had been dislodged, strewn about the trailer and seriously and irreparably damaged." Compl. ¶ 12. This claim speaks directly to the second element of a Carmack claim. Finally, Plaintiffs allege that "the fair market value" or "the necessary and reasonable cost of replacement of Plaintiffs' property" is $127,660. Compl. ¶¶ 39–40. These allegations plainly cover all three elements of a *prima facie* case of Carmack liability.

Defendants Three Flags and Ram contend that the Complaint fails to provide fair notice. Three Flags' Resp. ¶ 9. The suggestion that Defendants were not given fair notice of a claim under the Carmack Amendment is simply not tenable. Persons "with wide experience and knowledge in the transport of household goods to the United States" would certainly be put on notice of a potential Carmack claim when confronted by the allegations discussed above. *See* Pls.' Reply, Ex. K (letter from Ram to O. Berlanga).

Finding that the Complaint should have put Defendants on notice of a potential claim under the Carmack Amendment, the Court next asks whether the issue has been joined. Plainly, it has. Plaintiffs' Motion for Summary Judgment is founded on their contention that the summary-judgment evidence establishes beyond peradventure a *prima facie* case and the absence of a defense under the Carmack Amendment. The summary-judgment evidence includes sworn affidavits attesting to the condition of the Berlangas' property upon delivery, the damaged condition upon arrival, and the value of the property damaged. Defendants have fully discussed the Amendment's applicability to the facts presented in the summary-judgment record. They have pointed to factual disputes which, they contend, preclude the entry of summary judgment in favor of Plaintiffs. Defendants Terrier and Fernandez even raised the issue of the Carmack Amendment in their Motion for Summary Judgment, in which they claimed that Plaintiffs' state-law claims were preempted. The Court finds that the issue has been fully joined.

Defendants Terrier and Fernandez refer the Court to *Hanlon v. United Parcel Service,* 132 F.Supp.2d 503 (N.D.Tex.2001) in hopes that the Court will not only deny summary judgment to Plaintiffs but also dismiss their entire case with prejudice. In *Hanlon,* the court dismissed the plaintiff's claims with prejudice because they were preempted by the Carmack Amendment. The court then dismissed the case itself because the plaintiff had not pled a cause of action under the Carmack Amendment. The Court notes that Judge Lindsay did not dismiss the case itself with prejudice, only the state-law claims asserted by the plaintiff. Furthermore, the

plaintiff did not file a response to the motion to dismiss. Thus, even if the facts in the record would have supported a claim under the Carmack Amendment, the issue was never joined. *Hanlon* need not dictate the Court's actions in this case.

■ Because the pleadings give Defendants fair notice of a possible claim under the Carmack Amendment and the issue has been fully joined at the summary-judgment stage, the Court declines to deny summary judgment or to dismiss the case solely on grounds that Plaintiffs failed to assert an explicit claim under the Carmack Amendment. The Court possesses inherent authority to demand repleader *sua sponte*. *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1332 n. 94 (11th Cir.1998); *Fikes v. City of Daphne*, 79 F.3d 1079, 1083 n. 6 (11th Cir.1996). Plaintiffs are hereby ORDERED to file an Amended Complaint asserting a claim under the Carmack Amendment.

## VIII. Genuine Issues of Material Fact Preclude Summary Judgment

■ Plaintiffs contend that the summary-judgment evidence demonstrates that there are no genuine issues of material fact and they are entitled to judgment as a matter of law. They claim that they have proven that their belongings were delivered to Defendants in good condition, that the property was damaged upon its arrival in Plano and that the value of the property is $127,660. When a plaintiff makes a *prima facie* case under the Carmack Amendment, the burden of proof shifts to the defendant to prove that the damages were "caused solely by (a) the act of God, (b) the public enemy, (c) the act of the shipper, (d) public authority, or (e) the inherent vice or nature of the goods." *Frosty Land Foods Int'l, Inc. v. Refrigerated Transp. Corp.*, 613 F.2d 1344, 1346 (5th Cir.1980). Because there is nothing in the summary-judgment record supporting any other explanation, Plaintiffs contend, summary judgment in their favor is mandatory.

■ Defendants point to numerous factual matters of genuine, material dispute which would preclude the entry of summary judgment. The record is conflicting as to who packed and loaded Plaintiffs' household belongings, whether the trailer was sealed and locked upon delivery to Defendants, whether Defendants had an opportunity to inspect the goods upon delivery, whether the property was in good condition upon delivery, whether wet boxes were loaded onto the trailer at Nuevo Laredo, and whether the value of the damaged property was actually $127,660.00. The Court finds that genuine issues of material fact remain to be resolved by a finder of fact. Plaintiffs' Motion for Summary Judgment is DENIED as to the Carmack Amendment claim.

Plaintiffs' Motion for Summary Judgment purported to cover all viable claims against the defendants. Plaintiffs' motion and supporting brief did not demonstrate beyond peradventure that the summary-judgment entitles them to judgment as a matter of law as to any of the state-law claims brought against Defendants Three Flags and Ram. The motion is DENIED as to those claims as well.

## IX. Conclusion

The Carmack Amendment applies to the transportation of Plaintiffs' belongings from Mexico City, Mexico, to Plano, Texas, to the extent the transportation of this property was in the United States. Because the Carmack Amendment preempts state-law remedies inconsistent with federal law, the Motion for Summary Judgment filed by Defendants Terrier and Fernandez is GRANTED as to all state-law claims arising from transportation of Plaintiffs'

property in the United States. Plaintiffs' Complaint gives fair notice of a claim under the Carmack Amendment and the issue of Plaintiffs' entitlement to recover is properly joined. The Court therefore declines to dismiss Plaintiffs' case for failure to assert a claim under the Carmack Amendment. Plaintiffs are ORDERED to file an Amended Complaint asserting such a claim. Because genuine issues of material fact remain concerning the Plaintiffs' entitlement to recover under the Carmack Amendment, their Motion for Summary Judgment is DENIED.

It is so ordered.